**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Ricardo Elias CAMARGO–VERGARA, Antonieta Maria Sanchez, Santos Efrain Dominguez, Defendants–Appellants.**

No. 92–4159.

United States Court of Appeals, Eleventh Circuit.

July 7, 1995.

Manuel Gonzalez, Jr., Miami, FL, for Camargo Vergara.

Marc S. Nurik, Ft. Lauderdale, FL, Jeffrey D. Feldman, Feldman, Gale & Weber, P.A., Miami, FL, for Dominguez.

Lydia Ann Fernandez, Miami, FL, for Sanchez.

James W. McAdams, III, U.S. Atty., Jeffrey H. Sloman, Asst. U.S. Atty., Miami, FL, for appellee.

Before HATCHETT and EDMONDSON, Circuit Judges, and MELTON *, Senior District Judge.

* Honorable Howell W. Melton, Senior U.S. District Judge for the Middle District of Florida, sitting by designation.

HATCHETT, Circuit Judge:

In this cocaine conspiracy case, we affirm the convictions and sentences of two of the appellants, but reverse the convictions and vacate the sentences of the remaining appellant.

## FACTS

On April 26, 1991, law enforcement officers arrested Santos Dominguez, Ricardo Camargo–Vergara, and Antonieta Sanchez for conspiracy to import and possess with the intent to distribute 212 kilograms of cocaine.[1]

Two confidential informants for the Drug Enforcement Administration (DEA), Alfredo Ferrerio and "Mr. J.," posed as drug traffickers and negotiated with Oscar Fontalvo, a codefendant in this case, to import 212 kilograms of cocaine into the United States from Colombia.

Camargo–Vergara, Fontalvo's frequent companion, participated in several discussions with Fontalvo and the informants concerning the impending drug importation. Camargo–Vergara offered to help with the delivery, storage, and sale of the cocaine. Additionally, he suggested ways to transport the cocaine and volunteered to procure a place to store it.

On April 23, 1991, an undercover DEA agent, Willy Hernandez, posing as the drug courier, met with Fontalvo and Camargo–Vergara and told them that 212 kilograms of cocaine had successfully arrived via boat in the United States and were hidden in a safe place. The agent stated that he would not deliver the cocaine until he received payment. During the conversation, Camargo–Vergara inquired whether Hernandez was a police officer.

After the meeting, Fontalvo called a Colombian drug trafficker and requested money to purchase the cocaine. The Colombian drug trafficker referred Fontalvo to a person later identified as Santos Dominguez. Fontalvo called Dominguez and arranged to meet him at a local supermarket. During the

1. Our prior opinion in this case is reported at 26 F.3d 1075 (11th Cir.1994). Rehearing is granted, and this opinion replaces the prior opinion.

conversation, Dominguez told Fontalvo that he had a moustache and would be driving a white Lexus.

At the designated time, Dominguez drove to the meeting place, a supermarket, in a white Lexus, but left without making contact because he became suspicious that agents were monitoring the area. When Fontalvo told his Colombian associate that the meeting with Dominguez did not occur, the Colombian referred Fontalvo to Antonieta Sanchez.

When Fontalvo and Sanchez met, they developed a plan to assuage Dominguez's suspicion. Sanchez, a trusted associate of the Colombian drug trafficker, agreed to operate as a middle-person between Fontalvo and Dominguez. According to the plan, Sanchez would loan Fontalvo her automobile; then, Fontalvo would load it with cocaine and return it to her. Sanchez would then deliver the 212 kilograms of cocaine to Dominguez in two equal installments in exchange for approximately $1 million, which would be given to Fontalvo.

Hernandez, still posing as the drug courier, agreed with the plan and arranged for the government to load Sanchez's automobile with approximately 50 kilograms of sham cocaine, packaged to look like real cocaine. The false cocaine differed from genuine cocaine, however, in that when packaged the sham cocaine felt softer than real cocaine. The DEA agents also sprayed the cocaine packages with a special rub-off chemical that reacts to ultraviolet light, thereby allowing subsequent identification of persons who handle the cocaine.

A second undercover agent drove the sham cocaine-laden automobile back to pick up Camargo–Vergara and Fontalvo. Law enforcement agents arrested Fontalvo and Camargo–Vergara shortly thereafter when Camargo–Vergara noticed that government agents were following them.

After these arrests, the undercover agents continued with the charade and returned the false cocaine-laden automobile to Sanchez for delivery to Dominguez. Sanchez then drove the automobile to an underground parking garage where she met Dominguez. Dominguez removed the footlockers from the automobile and accompanied Sanchez upstairs to a vacant apartment. In a post-arrest statement, Sanchez stated that Dominguez opened the footlockers, felt the sham cocaine, and said, "I don't want this, take it away. The kilos feel strange. Give it back to the people who gave it to you." The government also asserts that Dominguez admitted in a post-arrest statement to DEA Agent Cynthia Schultz that "he had touched the kilos inside the trunk [and] said they were strange." When Dominguez handled the cocaine packages, the DEA's chemical solution rubbed off on his hands.

Government agents arrested Dominguez and Sanchez separately, when they drove out of the parking garage in their automobiles. In Dominguez's automobile, government agents found a piece of paper inscribed with the name and phone number of a Colombian drug trafficker that matched a page out of the note pad taken from Sanchez at the time of her arrest.

## PROCEDURAL HISTORY

On December 12, 1991, a jury convicted Dominguez of conspiracy to import cocaine,[2] importation of cocaine,[3] and conspiracy to possess with intent to distribute cocaine.[4] The jury also convicted Sanchez and Camargo–Vergara of conspiracy to possess with intent to distribute cocaine.

## CONTENTIONS OF THE PARTIES

Camargo–Vergara and Sanchez contend that the evidence is insufficient to support their convictions. Camargo–Vergara also contends that the district court erred in refusing to reduce his offense level pursuant to the United States Sentencing Guidelines for minimal participation in the offense.

Dominguez contends that the district court abused its discretion in denying his motions

2. 21 U.S.C. § 963.

3. 21 U.S.C. §§ 952(a), 960(a)(1), (b); 18 U.S.C. § 2.

4. 21 U.S.C. § 846.

for severance and mistrial, and in providing improper instructions to the jury. Dominguez also contends that the evidence was insufficient to sustain his convictions for conspiracy to import cocaine, importation of cocaine, and conspiracy to possess with intent to distribute cocaine. Dominguez also argues that the sentencing court improperly applied the Sentencing Guidelines.

## ISSUES

The appellants present the following issues:

(1) whether the evidence was sufficient to support their convictions;

(2) whether the district court erred in refusing to reduce Camargo–Vergara's offense level for minimal participation in the offense;

(3) whether the district court abused its discretion in denying Dominguez's motions for severance and mistrial;

(4) whether the district court abused its discretion in instructing the jury; and

(5) whether the district court improperly sentenced Dominguez under the Sentencing Guidelines.

## DISCUSSION

### A. Camargo–Vergara

#### 1. Sufficiency of the Evidence

Camargo–Vergara challenges the sufficiency of the evidence supporting his conviction for conspiracy to possess with intent to distribute cocaine. He argues that the trial evidence was insufficient to prove he had knowledge of the conspiracy and that his intoxication during certain relevant events negated the finding that he harbored specific criminal intent.

■ To determine whether sufficient evidence supports a conviction, this court views the evidence in the light most favorable to the government and determines whether a reasonable fact finder could conclude that the defendant was guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Herrera*, 931 F.2d 761, 762 (11th Cir.1991), *cert. denied*, 503 U.S. 972, 112 S.Ct. 1588, 118 L.Ed.2d 306 (1992).

■ Our review of the record convinces us that the evidence sufficiently supported Camargo–Vergara's conviction. Camargo–Vergara accompanied Fontalvo to all significant events leading to their arrests. For example, Camargo–Vergara was present at and participated in several drug negotiations, offering suggestions on how to transport and store the cocaine. Additionally, he actively participated in the attempted delivery of the cocaine. Viewed in the light most favorable to the government, this evidence could lead a reasonable fact-finder to conclude that Camargo–Vergara harbored the requisite knowledge and specific intent for conspiracy to possess with intent to distribute cocaine. *See United States v. Cruz–Valdez*, 773 F.2d 1541, 1547 (11th Cir.1985) (improbable that drug traffickers would entrust outsider with large amounts of narcotics), *cert. denied, Ariza–Fuentas v. United States*, 475 U.S. 1049, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986); *United States v. Bain*, 736 F.2d 1480, 1485 (11th Cir.1984) (presence and association with drug traffickers is a material factor upon which a fact-finder may rely in reaching a verdict); *United States v. Collins*, 779 F.2d 1520, 1529–30 (11th Cir.1986) (presence with other circumstances can provide bases for guilty verdict).

#### 2. Application of the Sentencing Guidelines

Camargo–Vergara argues that, even if his conviction is to be affirmed, he was the least culpable of all the appellants because he knew nothing about the drug transaction. Accordingly, he believes the district court erred in failing to reduce his offense level for minimal participation in the offense, pursuant to U.S.S.G. § 3B1.2.

■ A district court's determination of a defendant's role in an offense is a finding of fact subject to review only for clear error. *United States v. Taxacher*, 902 F.2d 867, 873 (11th Cir.1990), *cert. denied* 499 U.S. 919, 111 S.Ct. 1307, 113 L.Ed.2d 242 (1991); *United States v. Forbes*, 888 F.2d 752, 754 (11th Cir.1989). Moreover, the appellant bears the burden of proving the applicability of a particular Sentencing Guidelines section which

would reduce the offense level. *United States v. Wilson*, 884 F.2d 1355, 1356 (11th Cir.1989).

■ For the reasons stated in reviewing the sufficiency of the evidence, we conclude that the district court did not clearly err in refusing to reduce Camargo–Vergara's offense level for minimal participation in the conspiracy.

**B. Sanchez—Sufficiency of the Evidence**

■ Sanchez also contends that insufficient evidence supports her conviction for conspiracy to possess cocaine with the intent to distribute. She argues that the evidence failed to establish her knowledge of or intent to participate in the conspiracy.

Sanchez's argument cannot prevail. The government presented evidence that Sanchez agreed to serve as an agent for Fontalvo and transported 212 kilograms of cocaine to Dominguez in exchange for approximately one million dollars. Law enforcement officers arrested Sanchez as she carried out this criminal mission. Viewed in the light most favorable to the government, the evidence sufficiently supports the jury's determination that Sanchez knowingly participated in the conspiracy to possess with the intent to distribute cocaine.

**C. Dominguez**

**1. Motion for Mistrial**

Dominguez contends that the district court abused its discretion in denying his motion for a mistrial. He argues that the district court improperly allowed a government witness to testify concerning an alleged post-arrest statement that the government withheld from him prior to trial, in violation of Federal Rule of Criminal Procedure 16(b) and the district court's standing discovery order.

Federal Rule of Criminal Procedure 16(b) and the district court's standing discovery order impose a duty on the government to disclose Dominguez's post-arrest statements made in response to any government agent's interrogation. Prior to trial, the government only disclosed to Dominguez's lawyer the following post-arrest statement made to DEA Agent Cynthia Schultz:

> When asked about the foot lockers that Sanchez had, Dominguez said that he had looked inside them and that they contained "kilos." He said that he didn't want anything to do with them. Dominguez also said that he had touched the kilos in the footlocker.

Based on this disclosure, Dominguez's lawyer prepared a trial strategy emphasizing that Dominguez's statements clearly revealed that he "didn't want anything to do with" the cocaine that Sanchez offered to him and properly told her to take it away. Thus, at the beginning of trial, Dominguez's lawyer made the following opening statement:

> No, no, I don't want it. No, no way. These will be the words that you will hear out of the mouth of my client, Santos Dominguez.... When Santos Dominguez, at the very tail end of this thing, was offered to buy what was believed to be fifty kilograms of cocaine by someone else, because they needed to find a buyer, he said, no. Just say no.... [T]hat person was told to leave, and left the apartment building with the supposed cocaine in the trunk.

During the government's direct examination, Agent Schultz revealed for the first time that Dominguez said "[t]hat he had touched the kilos inside the trunk" and *"said they were strange."* (Emphasis added.)

Dominguez moved for a mistrial alleging that the government committed a discovery violation because it failed to disclose prior to trial that Dominguez said that the kilos were "strange."

■ A discovery violation under rule 16(a)(1)(A) or a standing discovery order is reversible error only when it violates a defendant's substantial rights. *See United States v. Rivera*, 944 F.2d 1563, 1566 (11th Cir.1991); *United States v. Silien*, 825 F.2d 320, 323 (11th Cir.1987); *United States v. Barragan*, 793 F.2d 1255, 1259 (11th Cir. 1986). Substantial prejudice exists when a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense, or if the mistake substantially influences the

jury. *United States v. Rivera*, 944 F.2d at 1566; *United States v. Barragan*, 793 F.2d at 1259. Inadvertence does not render a discovery violation harmless; rather, the purpose of rule 16 is to protect a defendant's right to a fair trial rather than to punish the government's non-compliance. *United States v. Noe*, 821 F.2d 604, 607 (11th Cir.1987); *United States v. Rodriguez*, 799 F.2d 649, 654 (11th Cir.1986); *United States v. Padrone*, 406 F.2d 560, 560–61 (2d Cir.1969).

■ Upon a review of the record, we hold that the government substantially prejudiced Dominguez's defense when it failed to disclose that Dominguez told Agent Schultz that the kilos were strange. First, as announced in his opening statement, Dominguez's lawyer intended to use the government's previously disclosed post-arrest statements to convince the jury that Dominguez had no experience with and wanted nothing to do with the proffered kilos of cocaine. Agent Schultz's trial testimony that Dominguez said the kilos were "strange" after touching them, shattered this defense because a person would not know a kilo of cocaine felt strange unless the person had some experience with the feel of real packages of cocaine. Moreover, the government drove home this inference in its closing argument.[5]

Second, Agent Schultz's testimony unexpectedly corroborated Sanchez's testimony that Dominguez said the kilos felt funny. Prior to trial, Dominguez moved to sever his trial from Sanchez's trial because she planned to testify that "Dominguez stated that the kilos felt funny."[6] In response, the government promised not to elicit testimony from Sanchez concerning that statement. Thus, the government led Dominguez to believe that would not corroborate Sanchez's trial testimony that Dominguez told her the "kilos felt funny."

Based on the government's assurances and Dominguez's recorded post-arrest statement, Dominguez planned to impeach Sanchez if she testified that Dominguez said the kilos felt funny. Agent Schultz's testimony eroded the effectiveness of this trial strategy when she unexpectedly testified that Dominguez also said in his own post-arrest statement that the kilos "were strange." If Dominguez had known the government would present such testimony, he could have changed his trial strategy. For example, he could have moved to suppress the statement, or he could have subpoenaed the DEA agents who recorded Dominguez's post-arrest statements to explain why their written account differed from Agent Schultz's recollection.

These facts sufficiently demonstrate, under this court's precedent, that the government's discovery violation substantially prejudiced Dominguez's defense. *See United States v. Noe*, 821 F.2d 604, 607 (11th Cir.1987) (nondisclosure of a tape recording was reversible error because it "attacked the very foundation of the defense strategy"); *United States v. Rodriguez*, 799 F.2d 649, 654 (11th Cir. 1986) (nondisclosure of documents was reversible error because the defendant did not have the opportunity to prepare to meet the evidence).

Moreover, in reaching this conclusion, we reject the government's contention that Dominguez's subsequent attempt to impeach Agent Schultz's testimony served to cure the government's discovery violation. We cannot penalize Dominguez and reward the government for Dominguez's reasonable attempts to mitigate the government's breach of the discovery rules.

### 2. Sufficiency of the Evidence

■ Even though we reverse Dominguez's conviction on other grounds, we review the sufficiency of the evidence support-

---

5. In closing argument the prosecutor stated "it's clear why he wanted nothing to do with [the cocaine] ... for whatever reason, he believed that there was something wrong with the fake cocaine."

6. Dominguez argued that his trial should be severed from Sanchez's trial because they planned antagonistic trial strategies. Sanchez planned to

claim that she did not know that the footlockers she delivered to Dominguez contained cocaine. Dominguez, on the other hand, planned to claim that Sanchez knowingly delivered the cocaine to him because she knew he had a history of criminal activity. Dominguez argued that these conflicting defenses would require them to attack each other.

ing his convictions. *See United States v. Khoury*, 901 F.2d 948, 961 (11th Cir.1994) ("Although we are reversing [the defendant's] conviction because of harmful constitutional error, nonetheless we must still rule on [the defendant's] sufficiency argument"); *also see United States v. Baptista–Rodriguez*, 17 F.3d 1354, 1369 (11th Cir.1994); *United States v. Fitapelli*, 786 F.2d 1461, 1464 (11th Cir.1986); *United States v. Palzer*, 745 F.2d 1350 (11th Cir.1984).

■ Dominguez rightfully contends that in order to sustain his conviction for conspiracy to import cocaine, the evidence must show that he knew the cocaine would be imported. *United States v. Champion*, 813 F.2d 1154, 1168 (11th Cir.1987); *United States v. Bollinger*, 796 F.2d 1394 (11th Cir. 1986). Dominguez contends, however, that no evidence proved that he knew the cocaine in this case was imported. According to Dominguez, the evidence only demonstrated that he was a mere buyer in a buyer and seller relationship with the other codefendants rather than an actual member of their conspiracy to import the cocaine.

The government responds that it need not prove that Dominguez had knowledge of all the details and phases of the conspiracy, but rather that he knew the essential nature of the agreement. *See United States v. Meester*, 762 F.2d 867, 881 (11th Cir.), *cert. denied*, 474 U.S. 1024, 106 S.Ct. 579, 88 L.Ed.2d 562 (1985). They assert that the jury could reasonably rely upon circumstantial evidence to establish Dominguez's agreement with the conspiracy. *United States v. Tamargo*, 672 F.2d 887, 889 (11th Cir.), *cert. denied*, 459 U.S. 864, 103 S.Ct. 141, 74 L.Ed.2d 119 (1982). The government directs us to follow this court's repeated admonition that "there is rarely any direct evidence of any agreement to join a conspiracy, and thus, the defendant's assent can be inferred from acts that furthered the conspiracy's purposes." *United States v. Miller*, 693 F.2d 1051, 1053 (11th Cir.1982).

The evidence presented at trial to support Dominguez's complicity in the conspiracy to import cocaine is sufficient. Dominguez first appears in this case after the undercover DEA agents refuse to relinquish the recently imported cocaine to Fontalvo and Camargo–Vergara. Fontalvo notified his Colombian associate that the couriers would not release the cocaine until they received payment. The Colombian arranged for Fontalvo to meet Dominguez at a supermarket. Apparently, Fontalvo and Dominguez had never met before because the Colombian found it necessary to describe Dominguez to Fontalvo. Dominguez then purchased the cocaine through a trusted middle person. Obviously, Dominguez had some form of contact with the Colombian. These activities suffice to support a reasonable jury's conclusion that Dominguez conspired to import cocaine. *See United States v. Champion*, 813 F.2d 1154, 1168 (11th Cir.1987) (a defendant cannot be convicted of importing cocaine unless the government establishes that he knew the substance was imported); *United States v. Bascaro*, 742 F.2d 1335, 1360 (11th Cir.1984), *cert. denied*, 472 U.S. 1017, 1021, 105 S.Ct. 3476, 3477, 87 L.Ed.2d 613 (1985).

In the absence of direct evidence demonstrating knowledge, this court has looked to highly probative circumstantial evidence supporting the inference that the defendant was aware of or facilitated the importation. For example, in *Champion* this court held that the government presented sufficient evidence to convict the defendants for cocaine importation where the defendants actually helped off-load the cocaine from airplanes. *Also see United States v. Martinez*, 763 F.2d 1297, 1303–04 (11th Cir.1985) (defendants helped off-load cocaine once it arrived at the port); *United States v. Corbin*, 734 F.2d 643, 652 (11th Cir.1984) (defendants helped off-load marijuana from boat for distribution). In *Meester*, this court held that the defendant's extensive and longstanding acquaintance with the coconspirators and his assistance in procuring airplanes proved his knowledge of the importation of narcotics. *Meester*, 762 F.2d at 881. In *Bascaro*, the massive quantity of marijuana involved (approximately 1.5 million pounds), the defendant's frequent and extensive interaction with the coconspirators, and the defendant's presence at various hiding places for the imported contraband proved his awareness of the narcotics importation. *Bascaro*, 742 F.2d at 1360.

■ The evidence supporting Dominguez's conviction included his name being on the note pad of a coconspirator, the Colombian drug lord's awareness that Dominguez might purchase the cocaine, and Dominguez's willingness to purchase the drugs immediately upon arrival in the United States. This evidence, we hold, is sufficient to support Dominguez's conviction for conspiring to import the cocaine.

■ For the same reasons, we hold the evidence is sufficient to support Dominguez's conviction for the substantive offense of importing the cocaine. Dominguez argues that because he did not personally participate in the importation offense, his conviction can only be sustained under a *Pinkerton* theory or an aiding and abetting theory. *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) (a conspirator is criminally liable for all reasonably foreseeable crimes committed during the course and in furtherance of the conspiracy); *United States v. Monaco,* 702 F.2d 860, 881 (11th Cir.1983). No *Pinkerton* instruction was given to the jury; thus, Dominguez argues that his conviction can only be sustained under an aiding and abetting theory. *See United States v. Perez,* 922 F.2d 782, 785 n. 4 (11th Cir.) (because the court failed to give a *Pinkerton* instruction, Perez's liability for the substantive offense must rest upon on aiding and abetting theory), *cert. denied,* 501 U.S. 1223, 111 S.Ct. 2840, 115 L.Ed.2d 1009 (1991); *United States v. Monaco,* 702 F.2d at 881; *United States v. Raffone,* 693 F.2d 1343, 1346 (11th Cir.1982), *cert. denied,* 461 U.S. 931, 103 S.Ct. 2094, 77 L.Ed.2d 303 (1983).

■ To prove aiding and abetting, the government had to demonstrate that: (1) a substantive importation offense was committed; (2) that Dominguez associated himself with that criminal venture; and (3) that Dominguez committed some act which furthered the crime. *See United States v. Perez,* 922 F.2d at 785. A person cannot aid and abet a crime that has already been completed. *United States v. Perez,* 922 F.2d at 786 n. 5; *Roberts v. United States,* 416 F.2d 1216, 1221 (11th Cir.1969).

■ Importation is a continuing crime that is not complete until the controlled substance reaches its final destination. *See United States v. Martinez,* 763 F.2d 1297, 1304 (11th Cir.1985); *United States v. Corbin,* 734 F.2d 643, 652 (11th Cir.1984).

■ The government argues that Dominguez was the final intended recipient and destination for the cocaine; consequently, the importation continued until he received the cocaine. Although Dominguez did not appear in this case until Fontalvo and Camargo–Vergara needed money to purchase the drugs from the undercover agents posing as drug couriers, he agreed to purchase the cocaine upon importation. Obviously, Dominguez was the final intended recipient of the cocaine. Consequently, we hold that the evidence is sufficient to support Dominguez's conviction on an aiding and abetting theory.

■ The evidence supporting Dominguez's conviction for conspiring to possess with the intent to distribute cocaine is substantial. Dominguez's aggregate acts of arranging to purchase approximately 200 kilograms of cocaine through the use of a middle-person, avoiding surveillance, and then ultimately rejecting the cocaine merely because the cocaine felt funny can adequately support a reasonable jury's assessment that he conspired to possess and distribute the cocaine.

### CONCLUSION

Thus, for the foregoing reasons, we affirm the judgments and sentences of the district court with respect to all appellants, except as to Dominguez. As to Dominguez, we reverse and remand the case to the district court for a new trial.

AFFIRMED IN PART, REVERSED IN PART.