[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 31, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-15083
Non-Argument Calendar

_____

D. C. Docket No. 05-80205-CR-DTKH

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PHILLIPPE ZAMOR,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 31, 2007)**

Before WILSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Phillippe Zamor appeals his convictions for possessing a false passport, in violation of 18 U.S.C. § 1546(a); making false statements to special agents of the United States Department of State, Diplomatic Security Service, in violation of 18 U.S.C. § 1001(a)(2); impersonating a United States citizen, in violation of 18 U.S.C. § 911; and knowingly possessing without lawful authority a Florida identification card in the name of another person, in violation of 18 U.S.C. § 1028A. On appeal, Zamor argues that the district court abused its discretion in denying his objection to the government's admission of Maktoine Thomas's birth certificate, where the government had not disclosed the birth certificate to Zamor during pre-trial discovery. For the reasons set forth more fully below, we affirm.

At Zamor's trial, the government presented the following evidence. First, Special Agent Scott Banker, an agent for the Diplomatic Security Service in the United States Department of State, testified that he investigates passport and visa violations and in that capacity was called to Palm Beach County to conduct an interview of someone who identified himself as Maktoine Thomas. Banker brought a copy of a passport application with him to the interview, which application Banker had obtained based upon a passport number he had been given. According to Banker, the name on the passport application was Maktoine Thomas and the picture attached to the application was of Zamor. Further, the passport that

2

had been recovered from Zamor's pocket at the time of his arrest contained a picture of Zamor, a birth date of November 27, 1979, and was issued to the name Maktoine Thomas. During Banker's interview of Zamor, he elicited that Zamor had completed the passport application that Banker had and that Zamor's photograph was the one attached to the passport application. Zamor told Banker that his name was Maktoine Thomas.

After the interview, Banker located driver's licenses and identification cards in a government database that contained the name Maktoine Thomas and a birth date in November 1979. Pictures on two of the licenses did not match. Banker found licenses and identification cards in the name of Phillippe Zamor and those cards contained pictures of Zamor. Banker continued his investigation in Naples, Florida, where he located three high school yearbooks that contained pictures and the name of Maktoine Thomas.

Maktoine Thomas then testified that he was born on November 27, 1979, was a citizen of the United States, and had one sister and six brothers, including a half-brother named Phillippe Zamor. The government then asked Thomas to take out his birth certificate. Thomas testified that the government had made a copy of his birth certificate the previous day, and the government then moved to admit the copy of the birth certificate into evidence. Zamor's counsel objected, alleging a

3

discovery violation because it was the first time that he had seen Thomas's birth certificate. Zamor's counsel clarified that he was not objecting on authenticity grounds. Counsel argued that, because of the government's failure to disclose the document when it was received, he was "prejudiced in [his] inability to do a more thorough examination." The court excused the jury and the following discussion then occurred:

> Court: I am not suggesting there is bad motive or effort to circumvent the rules. . . . If the Government agent knows there is a document that they are probably going to use and elects to allow a third party to hold on to it so the agent doesn't hold on to it, I am going to treat that is [sic] and was in the possession of the Government and that obviously is the beginning situation, because you have some situations where something is in the possession of law enforcement and it is not turned over, and that is considered a discovery violation. I am going to start out treating this as though it is a discovery violation. . . . The case law is clear, in order to prevail on a discovery violation, the defendant has to show that he has been prejudiced. . . . What is the prejudice in this case?

> Zamor's counsel: Your Honor, I had no opportunity to check out the validity of this document to see if it is a valid document. I am going on the appearance that I see it in court, and I've suffered some prejudice in that regard.

> Court: . . . In retrospect . . . it probably would have been better had the agent made a copy of it so the copy could have been disclosed to the defense as part of pretrial discovery procedures, but I think it is clear this was not done in any effort to cause surprise or to sandbag the defense. . . . Second, I don't think the defense has shown substantial prejudice in this. This is a document that is really self authenticating. The whole issue in this case is one of identity and, obviously, Mr. Thomas himself is present in court indicating who he is, and so on.

4

The document is simply corroborative evidence of his own oral testimony. We are in the middle of a trial. A recess or anything else, really, wouldn't achieve any benefit at all. So, I am finding for the sake of the record, there has been a discovery violation, but, nonetheless, I am finding that there is no prejudice resulting from this, and so, therefore, I would overrule the objection . . . .

The jury was then returned to the courtroom and, continuing with its direct examination of Thomas, the government asked Thomas if he knew if his brother was in the courtroom or if he could identify his brother. Thomas testified that he could not identify his brother because he had not seen him in 20 years. Thomas recognized his name and date of birth on the passport application, but he did not write that on the application nor did anyone else write it for him. With regard to the driver's licenses and identification cards in evidence, Thomas testified that it was not his picture on two of the licenses. Further, the name and date of birth on the passport at issue was his, but the picture on the passport was not of him. Thomas also identified the high school yearbook pictures as being of himself.

Next, Jacqueline Thomas testified that she was Maktoine Thomas's sister and she identified Thomas as the man who testified immediately before her. Jacqueline stated that her parents had told her that she had a half-brother named Phillippe Zamor, but that she had never met him. Jacqueline identified her brother Maktoine's picture on one of the driver's licenses in evidence, but she stated that the pictures on the other two licenses were not of Maktoine. Norman Lee Parrish,

5

an immigration inspector at the United States Citizenship and Immigration Services, testified that, in 1984, an individual named Phillippe Zamor had filed an application for asylum, which application included fingerprints of that individual. Parrish stated that the asylum application was still pending at the time of the instant trial. Deputy United States Marshall Michael Witkowski stated that, at the time of defendant Zamor's instant arrest, he took Zamor's fingerprints and photograph. Deputy Witkowski further testified that the defendant signed "Zamor Phillippe" when directed to sign his name on his fingerprint card. Lastly, the government tendered Officer Gregory Parkinson as an expert in fingerprint comparison. Officer Parkinson stated that he had performed a fingerprint comparison on all the fingerprints that were in evidence in the instant case, and that he determined that all the fingerprints belonged to the same person.

Zamor did not testify on his own behalf, nor did he present any other witnesses. The jury found Zamor guilty of all four counts of the superseding indictment. Thereafter, the court sentenced Zamor to 51 months' imprisonment and 3 years' supervised release.

Zamor argues on appeal that this Court should vacate his conviction based upon the district court's erroneous admission of Maktoine Thomas's birth certificate. Zamor contends that the admission of the birth certificate was "central"

to the government's claim that Zamor was not the true Maktoine Thomas. He further asserts that the birth certificate was not merely corroborating evidence of Thomas's testimony, but was actually the "official document" corroborating Thomas's claim that he was the true Maktoine Thomas. He concludes that the admission of the birth certificate was erroneous because he had no time to prepare for it, and its admission resulted in complete surprise and substantial prejudice to his defense.

We review for abuse of discretion the district court's admission of evidence over a defendant's objection based upon a discovery violation. United States v. Rodriguez, 799 F.2d 649, 652 (11th Cir. 1986).

Pursuant to Federal Rule of Criminal Procedure 16, the government must, upon the defendant's request, allow the defendant to inspect and copy all documents that "the government intends to use . . . in its case-in-chief at trial." Fed.R.Crim.P. 16(a)(1)(E)(ii). "A discovery violation under [Rule 16] or a standing discovery order is reversible error only when it violates a defendant's substantial rights." United States v. Camargo-Vergara, 57 F.3d 993, 998 (11th Cir. 1995). "Substantial prejudice exists when a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense, or if the mistake substantially influences the jury." Id. at 998-99. "Inadvertence does not render a discovery

violation harmless; rather, the purpose of rule 16 is to protect a defendant's right to a fair trial rather than to punish the government's non-compliance." Id. at 999. "The actual prejudice will often turn on the strength of the Government['s] case." Rodriguez, 799 F.2d at 652.

In Zamor's case, it is not disputed that the district court correctly determined that the government had violated the standing discovery order by failing to disclose Thomas's birth certificate to Zamor. The issue on appeal is whether Zamor suffered substantial prejudice as a result of the government's discovery violation. See Camargo-Vergara, 57 F.3d at 998-99. On this record, Zamor has not established that he suffered substantial prejudice as a result of the discovery violation.

In addition to Thomas's birth certificate, the government submitted overwhelming evidence that Zamor was not the true Maktoine Thomas, and, thus, that he had committed the offenses alleged in his indictment. First, Agent Banker discovered, during his investigation of the instant case, driver's licenses that contained pictures of Zamor with the name "Maktoine Thomas." Second, Thomas appeared in court and testified that it was his name, but not his picture, on the driver's licenses and passport application in evidence. Thomas also identified the three pictures from the high school yearbooks as being his with the name

"Maktoine Thomas" next to them. Moreover, Thomas's sister, who testified immediately following Maktoine, identified the individual who testified before her as her brother Maktoine, and she testified that the driver's licenses contained Maktoine's name, but the pictures were not of Maktoine. Lastly, the testimony of several witnesses revealed that the fingerprints from Phillippe Zamor's asylum application matched the fingerprints taken from Zamor on the day of his instant arrest. This evidence collectively supports the jury finding that the defendant Zamor was actually Phillippe Zamor and not the true Maktoine Thomas.

In light of all of the government's evidence, the birth certificate served as another piece of evidence corroborating Thomas's true identity. During the side-bar discussion following Zamor's objection to the admission of the birth certificate, Zamor's counsel first conceded the authenticity of the birth certificate, but then stated, when asked by the court to explain any prejudice, that he "had no opportunity to check out the validity of this document to see if it is a valid document. I am going on the appearance that I see it in court, and I've suffered some prejudice in that regard." Zamor did not explain further the prejudice that he suffered, nor does he expound on the argument before this Court. Furthermore, Zamor did not cross-examine Thomas regarding the birth certificate.

Given the government's overwhelming evidence of Zamor's guilt, and the

lack of specific arguments from Zamor detailing exactly how he was prejudiced, the district court did not abuse its discretion in determining that Zamor had not suffered substantial prejudice due to the government's discovery violation.[1] Accordingly, Zamor's convictions are

**AFFIRMED.**

---

[1]Zamor also argues on appeal that his convictions should be vacated because his case is factually similar to Camargo-Vergara, a case in which we held that the defendant was substantially prejudiced by the government's discovery violation. See Camargo-Vergara, 57 F.3d at 998-99. Upon review of our decision in Camargo-Vergara and the record in Zamor's case, Zamor's argument is without merit because he does not demonstrate, as the defendant did in Camargo-Vergara, that he intended to present a defense based upon the lack of Thomas's birth certificate being in evidence, nor does Zamor explain how his trial strategy was affected by the government's surprise disclosure of the birth certificate. As such, Zamor's case is distinguishable from Camargo-Vergara.