[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-14302
Non-Argument Calendar
_____

D.C. Docket No. 3:13-cr-00093-MCR-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PRESTON LEE JOHNSON, JR.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(June 25, 2015)

Before HULL, JULIE CARNES and FAY, Circuit Judges.

PER CURIAM:

After a jury trial, Preston Lee Johnson, Jr., appeals his conviction for one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).  On appeal, Defendant Johnson challenges: (1) the district court's denial of his motion for a mistrial; and (2) the admission of his 2003 Florida conviction for possession of a firearm by a convicted felon.  After review, we affirm.

## I.  BACKGROUND FACTS

Defendant Johnson's firearm charge arose from an incident in which he carried a shotgun onto a neighbor's porch after an argument.  The following facts are based on the government's trial evidence to which Defendant Johnson either did not object at trial or does not now raise any evidentiary issue on appeal.

On March 14, 2013, officers with the Escambia County Sheriff's Office responded to an armed disturbance call at the home of George Jenkins at 1595 West Yonge Street.  According to Jenkins, Johnson lived "right down the street" with his brother Ray.  On the evening of March 14, Johnson entered Jenkins's home yelling about a woman who owed him money for washing a car.  Another neighbor apologized, quickly removed Johnson from Jenkins's home, and walked Johnson down the street.

About an hour later, however, Defendant Johnson reappeared on Jenkins's porch, pumping a shotgun and staggering under the influence of alcohol.  Jenkins

told Johnson he was going to call the police, and then called 911. In the 911 call, Jenkins told the operator "Ray's brother," who "stay[s] right down the street," had come over to his porch with a 12-gauge shotgun.

When the officers arrived, Jenkins told them that a man named Preston had brought a shotgun onto his front porch, yelled, and ejected a round of ammunition from the gun. Jenkins told the officers Preston was "Ray's brother" and indicated where he thought Preston lived. The officers also found and collected a live Winchester 12-gauge shotgun shell on Jenkins's porch.

One of the officers, Sergeant Michael Hoyland, realized he had interacted with Preston a few hours earlier and identified him as Defendant Johnson. Sergeant Hoyland went to an address at 1609 West Yonge Street that Johnson had provided earlier, which was about a block away. Sergeant Hoyland found Johnson in a shed behind the house, which appeared to be empty and under renovation. Johnson was sleeping on a mattress, with a shotgun leaning against the wall and some shells in a nearby backpack. The officers could not rouse Johnson, and did not arrest him, but they seized the shotgun and some shells, leaving a note advising him the property had been seized. The shotgun was a Browning 12-gauge shotgun made in Japan, and the 12-gauge shotgun shells were made by Winchester in Illinois and by Remington in Arkansas.

3

The next day, Special Agent Brent Carrier with the Bureau of Alcohol, Tobacco, Firearms and Explosives, after determining that Defendant Johnson was a convicted felon, visited Jenkins's home and retrieved an additional 12-gauge Winchester shotgun shell that was lying in Jenkins's garden.

A few days later, on March 18, 2013, Agent Carrier visited the 1609 West Yonge Street address where Defendant Johnson had been found with the shotgun. Johnson agreed to speak with Agent Carrier, and during the interview, admitted drinking with Jenkins, leaving after getting into an argument, and then reappearing at Jenkins's residence with the shotgun and some shells.  Johnson also admitted he knew he was not allowed to possess a firearm because of his status as a convicted felon.  With Johnson's permission, Agent Carrier searched the shed, saw a twin mattress on the floor, and saw no indications anyone lived in the shed other than Johnson.  The house on the property appeared to Agent Carrier to be under renovation with no one living in it.

## II.  DISCUSSION

### A.    Motion for a Mistrial

Prior to trial and at Defendant Johnson's request, the government provided Johnson with a one-page report prepared by Agent Carrier that summarized his March 18 interview with Johnson.  At trial, Agent Carrier, in testifying about the interview, mentioned three statements by Defendant Johnson that were not

4

included in his one-page report.  Specifically, Agent Carrier testified that Johnson said: (1) he was living in the shed where officers found him asleep next to a shotgun; (2) he was helping his brother Ray renovate the house on the property; and (3) no one else lived in the shed.

Defense counsel did not object to Agent Carrier's testimony.  Instead, on cross-examination, defense counsel asked Agent Carrier about each of the three statements and had Agent Carrier admit that he did not include them in his one-page report.  After Agent Carrier's testimony, Defendant Johnson moved for a mistrial, arguing outside the jury's presence that these three omissions from Agent Carrier's report violated Federal Rule of Criminal Procedure 16.  Defense counsel stated that Agent Carrier's testimony had undermined his defense strategy that others had access to the shed and the shotgun.

After a recess to review the trial transcript, the district court pointed out that other government witnesses had testified to the same underlying information—that Johnson lived with his brother Ray and that Johnson had said to Sergeant Hoyland that he lived at the 1609 West Yonge Street address.  The district court denied Johnson's motion, concluding that, given the other trial testimony, the Rule 16 violation did not result in incurable prejudice.  The district court struck Agent Carrier's testimony as to those three statements from the record and gave the jury a curative instruction, telling the jury to remove from their memories Agent Carrier's

5

testimony about those three statements and to "not consider [those] statements in any way in arriving at [their] verdict."

Rule 16 requires the government, upon the defendant's request, to "disclose to the defendant the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial." Fed. R. Crim. P. 16(a)(1)(A). "A discovery violation does not automatically preclude the government's use of the evidence at trial." United States v. Quinn, 123 F.3d 1415, 1423 (11th Cir. 1997) (alteration omitted). And, even if a Rule 16 violation occurred, we will not reverse unless the violation prejudiced a defendant's substantial rights, meaning that actual prejudice must be shown. See United States v. Chastain, 198 F.3d 1338, 1348 (11th Cir. 1999). The defendant's substantial rights are violated when the "defendant is unduly surprised and lacks an adequate opportunity to prepare a defense, or if the mistake substantially influences the jury." United States v. Camargo-Vergara, 57 F.3d 993, 998–99 (11th Cir. 1995); see also United States v. Noe, 821 F.2d 604, 607 (11th Cir. 1987) ("[T]he degree to which [a defendant's trial] rights suffer as a result of a discovery violation is determined not simply by weighing all of the evidence

introduced, but rather by considering how the violation affected the defendant's ability to present a defense.").[1]

Here, we conclude that the district court did not abuse its discretion in denying Defendant Johnson's motion for a mistrial. Even if the government violated Rule 16, the admission of the three statements did not prejudice Johnson's substantial rights. As the district court noted, prior to Agent Carrier's testimony, Jenkins testified that Johnson lived with his brother Ray down the street and Sergeant Hoyland testified that Johnson had told him the 1609 Yonge Street address was his residence. Sergeant Hoyland also testified that no one else appeared to be living in the main house, which was under renovation, or in the shed with Johnson.

In addition to this testimony, the government had already presented Agent Carrier's testimony that Defendant Johnson admitted holding the shotgun in front of Jenkins's home and knowing he could not possess a firearm as a result of his prior felony conviction. Admission of these properly disclosed statements had already substantially undercut Defendant Johnson's defense that he had only fallen asleep next to the shotgun in a shed over which he did not have exclusive control. Even before trial, defense counsel knew from the disclosed report that she would

---

[1]We review the denial of a motion for mistrial for abuse of discretion. United States v. Chavez, 584 F.3d 1354, 1362 (11th Cir. 2009). We also review district court rulings on alleged discovery violations under Rule 16 for abuse of discretion. United States v. Hastamorir, 881 F.2d 1551, 1559 (11th Cir. 1989).

need to either impeach Agent Carrier or explain Johnson's statements to Agent Carrier in order to obtain an acquittal.  Given the evidence that was already before the jury, Agent Carrier's testimony about the three undisclosed statements did not "shatter[ ]" Defendant Johnson's trial strategy.  See Camaro-Vergara, 57 F.3d at 999.

Furthermore, the district court provided a curative instruction following Agent Carrier's testimony.  Absent any indication to the contrary, we presume the jury followed the district court's instruction and disregarded the three undisclosed statements in reaching their guilty verdict.  See United States v. Mock, 523 F.3d 1299, 1303 (11th Cir. 2008) (concluding there was nothing in the record to suggest the jury failed to follow the court's curative instruction to disregard certain evidence).  Under the specific facts of this case, the district court did not abuse its discretion in denying Defendant Johnson's motion for a mistrial.

## B.    Prior Firearm Conviction

Defendant Johnson argues that the district court erred in denying his motion in limine and admitting into evidence his 2003 Florida conviction—for possession of a firearm, a shotgun, by a convicted felon—because it was irrelevant and unduly prejudicial.[2]

---

[2]We review a district court's denial of a motion in limine for abuse of discretion.  United States v. Thompson, 25 F.3d 1558, 1563 (11th Cir. 1994).  We also review for abuse of

Under Federal Rule of Evidence 404(b), evidence of "a crime, wrong, or other act" is not admissible to prove "a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Such evidence "may be admissible for another purpose," however, such as to prove a defendant's motive, intent, knowledge, or absence of mistake.  Id. 404(b)(2).  To be admissible, the Rule 404(b) evidence must (1) be relevant to an issue other than the defendant's character, (2) be sufficiently proven to allow a jury to find that the defendant committed the extrinsic act, and (3) possess probative value that is not substantially outweighed by its undue prejudice under Federal Rule of Evidence 403.  United States v. Sanders, 668 F.3d 1298, 1314 (11th Cir. 2012).  Rule 404(b) is a rule of inclusion that "allows extrinsic evidence unless it tends to prove only criminal propensity."  Id.

With regard to the first prong, a convicted felon's knowing possession of a firearm at a previous time is relevant to whether his possession of a firearm at a later time is knowing rather than mistaken or accidental.  United States v. Jernigan, 341 F.3d 1273, 1281 (11th Cir. 2003).  With regard to the third prong, to determine whether the probative value of the prior firearm offense is substantially outweighed by its prejudicial effect, a district court must make "a common sense assessment of all the circumstances surrounding the extrinsic offense, including prosecutorial

---

discretion a district court's decision to admit or exclude evidence.  United States v. Smith, 122 F.3d 1355, 1357 (11th Cir. 1997).

9

need, overall similarity between the extrinsic act and the charged offense, as well as temporal remoteness." Id. at 1282 (quotation marks omitted).

Even if a district court erroneously admitted evidence under Rule 404(b), we may still affirm if the error was harmless. United States v. Hubert, 138 F.3d 912, 914 (11th Cir. 1998); see also Fed. R. Evid. 103(a); Fed. R. Crim. P. 52(a). Evidence admitted in violation of Rule 404(b) is harmless where there is substantial evidence of the defendant's guilt. United States v. Chavez, 204 F.3d 1305, 1317 (11th Cir. 2000); see also United States v. Harriston, 329 F.3d 779, 789 (11th Cir. 2003) (stating that the admission of a prior conviction is harmless "where there is overwhelming evidence of guilt").

Here, Defendant Johnson did not show the district court abused its discretion in admitting his 2003 Florida conviction for being a felon in possession of a firearm. That conviction was highly probative of Defendant Johnson's knowing possession given the close similarity between the two offenses. See United States v. Zapata, 139 F.3d 1355, 1357-58 (11th Cir. 1998). Furthermore, any prejudice resulting from the admission of the prior conviction was mitigated by the district court's limiting instruction to the jury that they could not use the evidence of Defendant Johnson's prior conviction to decide whether Johnson actually possessed the firearm and the ammunition in the current case. See United States v. Edouard, 485 F.3d 1324, 1346 (11th Cir. 2007).

10

In any event, we readily conclude that any error in admitting the prior conviction was harmless in light of the overwhelming evidence of Defendant Johnson's guilt in the form of eyewitness testimony, corroborated by physical evidence and a 911 call, the police testimony, and Johnson's confession during his interview with Agent Carrier.

**AFFIRMED.**