[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14695
Non-Argument Calendar

_____

D.C. Docket No. 1:17-cr-00142-ELR-LTW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIAM GERARD BROWN,
a.k.a. Gerard Thomas
a.k.a. Gerard Sims
a.k.a. Gerard Brown,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(April 8, 2021)

Before JORDAN, NEWSOM, and BLACK, Circuit Judges.

PER CURIAM:

William Gerard Brown appeals his conviction and sentence for one count of possession of a firearm by a convicted felon. He raises seven issues on appeal, which we address in turn. After review, we affirm Brown's conviction and sentence.

## I. DISCUSSION

*A. Motion to Suppress*

First, Brown challenges the district court's denial of his pretrial motion to suppress. The Fourth Amendment guarantees the right against unreasonable searches and seizures. U.S. Const. amend. IV. An officer does not violate the Fourth Amendment by merely approaching an individual in a public place and putting questions to him if the person is willing to listen. *Florida v. Royer*, 460 U.S. 491, 497 (1983). Only where an officer, by means of physical force or a show of authority, has in some way restrained the liberty of a citizen may a court conclude that a seizure has occurred. *United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011).

The ultimate inquiry remains whether a person's freedom of movement was restrained by physical force or by submission to a show of authority. *See California v. Hodari D.*, 499 U.S. 621, 626 (1991). A seizure by means of a show of authority requires both a show of authority and submission to that authority. *Id.* at 628-29. An officer effects a seizure by means of a show of authority where "the

2

officer's words and actions would have conveyed . . . to a reasonable person" that "he was being ordered to restrict his movement," and those words and actions actually "produce his stop." *Id.* at 628. Certain "circumstances ... might indicate a seizure, even where the person did not attempt to leave," including "the display of a weapon by an officer ... or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

Under the Supreme Court's decision in *Terry*, law enforcement officers may seize a suspect for a brief investigatory stop when the officers have a reasonable suspicion that the suspect was involved in, or about to be involved in, criminal activity, even though probable cause is lacking. *United States v. Lewis*, 674 F.3d 1298, 1303 (11th Cir. 2012). The reasonable suspicion standard requires less information than probable cause, and the information available to the officer may be less reliable. *Alabama v. White*, 496 U.S. 325, 330 (1990). When determining whether reasonable suspicion exists, the courts must review the "totality of the circumstances" of each case to ascertain whether the detaining officer had a "particularized and objective basis" for suspecting legal wrongdoing. *United States v. Arvizu*, 534 U.S. 266, 273 (2002). To satisfy the reasonable suspicion standard, an officer must be able to point to specific and articulable facts which,

3

taken together with rational inferences from those facts, reasonably warrant the intrusion. *Terry v. Ohio*, 392 U.S. 1, 21 (1968).

The district court did not err in denying Brown's motion to suppress. *See United States v. Ramirez*, 476 F.3d 1231, 1235-36 (11th Cir. 2007) (explaining a district court's denial of a defendant's motion to suppress is reviewed under a mixed standard of review—reviewing the district court's findings of fact for clear error and the district court's application of law to those facts *de novo*). As an initial matter, Brown's flight from officers was not provoked. Brown did not present evidence to support his assertion that Officer Thomas Crowder yelled at him, and no witness testified the exchange between Brown and the officers involved yelling. Further, Officer Edgar Magana and Crowder testified they exited their car only after Brown fled from them. Additionally, the record supports that officers initially spoke with Brown from their car and they had not activated their car's emergency lights. The record also supports that Brown sprinted away from officers at full speed, through fences and woods, while the officers commanded him to stop. The officers did not provoke Brown to flee, and he was not seized at that time because he did not submit to a show of authority from the officers. *Hodari D.*, 499 U.S. at 626 (explaining when a suspect flees from the police, he is not submitting to their authority and therefore is not seized). Indeed, officers had not made a show of authority before Brown fled from them.

4

In addition to his flight, the record shows that the officers observed Brown with a marijuana cigarette before he fled and that he possessed a gun while fleeing from the officers.  Moreover, the officers observed that Brown discarded the gun as he fled, and the officers recovered the discarded gun shortly thereafter.  Therefore, because Brown was not seized until he was apprehended at the end of his flight and the officers had reasonable suspicion to seize him, the district court did not err in denying his motion to suppress.

B.  *Booking Report*

Second, Brown contends the district court abused its discretion in admitting a booking report three weeks before his trial.  Late disclosure of evidence required to be turned over under Rule 16 or a standing discovery order necessitates reversal only if it violates a defendant's substantial rights.  *United States v. Camargo–Vergara*, 57 F.3d 993, 998 (11th Cir. 1995).  Substantial prejudice results if a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense.  *Id.*

The district court did not abuse its discretion in admitting the booking report. *See United States v. Man*, 891 F.3d 1253, 1264 (11th Cir. 2018) (stating we review evidentiary rulings for abuse of discretion).  The information contained in the booking report did not constitute new information that was previously unknown to Brown.  *See Camargo–Vergara*, 57 F.3d at 998.  The record shows Shantae Tarver

5

acknowledged her phone number during the suppression hearing and that Brown knew the Government would introduce the jail calls because of its motion *in limine*. Moreover, the rest of the information on the booking report included the time and date of Brown's booking, the arresting officer, and the charges he faced, all of which Brown already knew. Indeed, as Brown admits, he could have moved for a continuance once the Government provided the booking report, but he chose to proceed to trial. Further, Tarver refers to "William Brown" in one of the jail calls, from which the jury could have inferred that Brown participated in that call.

## C. Mistrial

Third, Brown asserts the district court abused its discretion by denying his motion for a mistrial following Felecia Ivey's testimony about the booking procedures at the Fulton County Jail. Statements offered for the truth of the matter asserted by an out-of-court declarant are considered hearsay and are inadmissible, subject to a number of exceptions. Fed. R. Evid. 801(c). One exception to the rule against hearsay statements is the business records exception. *Id.* 803(6). This exception allows records of regularly conducted activity to be admitted if: (1) "the record was made at or near the time by—or from information transmitted by—someone with knowledge"; (2) "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit"; (3) "making the record was a regular practice of that activity";

6

(4) "all these conditions are shown by the testimony of the custodian or another qualified witness"; and (5) "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *Id.*

The district court did not abuse its discretion in denying Brown's motion for a mistrial. *See United States v. Ettinger*, 344 F.3d 1149, 1161 (11th Cir. 2003) (reviewing a district court's denial of a motion for a mistrial under the abuse of discretion standard). Ivey's testimony did not place prejudicial information before the jury because she testified generally about the booking process and did not mention Brown specifically. The Government elicited her testimony because it was required to establish a foundation for the booking report that it later introduced. Fed. R. Evid. 803(6). Indeed, Brown's own challenge to the booking report before trial caused the Government to present Ivey's testimony. Moreover, Brown did not request the district court provide a curative instruction at the time of Ivey's testimony.

D.  Allen *Charge*

Fourth, Brown asserts the district court abused its discretion by giving a modified charge to the jury under *Allen v. United States*, 164 U.S. 492 (1896). We normally review a district court's decision to give an *Allen* charge for abuse of discretion and will find an abuse only if the charge was "inherently coercive."

7

*United States v. Woodard*, 531 F.3d 1352, 1364 (11th Cir. 2008). However, where "a party raises an argument regarding jury instructions for the first time on appeal," we review the issuance of that instruction for plain error. *United States v. Hughes*, 840 F.3d 1368, 1384 (11th Cir. 2016).

In reviewing a district court's decision to give an *Allen* charge, we look at the language of the charge and the totality of the circumstances under which it was given. *Woodard*, 531 F.3d at 1364. Specifically, we consider factors such as: (1) whether the charge instructed the jurors they are not expected to give up their honest beliefs about the weight of the evidence; (2) whether the jury was polled before the charge was given; (3) whether the charge was given after a second notification from the jury that there was difficulty reaching a verdict; and (4) the amount of time between giving the charge and the announcement of the verdict. *Id.* We repeatedly have held that the text of the pattern jury instruction for the *Allen* charge is appropriate and not coercive.[1] *United States v. Oscar*, 877 F.3d 1270, 1286 (11th Cir. 2017).

The district court did not err, plainly or otherwise, by giving the modified *Allen* charge to the jury. The jury indicated it was at an impasse and agreed that it might benefit from more time deliberating. The district court did not charge the

[1] The full text of the pattern jury instruction has been omitted because of its length. The pattern jury instruction for a modified *Allen* charge can be found at Pattern Crim. Jury Instr. 11th Cir. T5 (2020).

jury late in the day, forcing them to choose between adjourning or staying late, and, instead, charged them in the afternoon. Moreover, the majority of the language from the district court's charge followed the Eleventh Circuit's pattern charge.

### E. Motion for New Trial

Fifth, Brown states the district court abused its discretion by denying his motion for a new trial following the Supreme Court's decision in *Rehaif v. United States*, 139 S. Ct. 2191 (2019). Federal Rule of Criminal Procedure 33 states that a district court, "[u]pon the defendant's motion, . . . may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).

Under § 922(g)(1), it is unlawful for anyone "who has been convicted in any court of . . . a crime punishable by imprisonment for a term exceeding one year" to possess a firearm, and an individual who "knowingly" does so is subject to punishment. 18 U.S.C. §§ 922(g)(1), 924(a)(2). In *Rehaif*, the Supreme Court held that a "prosecution under 18 U.S.C. §§ 922(g) and 924(a)(2) [requires] the Government [to] prove both that the defendant knew he possessed a firearm and that he knew he belonged to the relevant category of persons barred from possessing a firearm." *Rehaif*, 139 S. Ct. at 2200.

In *Reed*, we held the jury could have inferred the defendant knew he was a felon from his stipulation before trial that he had been convicted of a felony

9

offense punishable by a term of imprisonment in excess of one year where the defendant challenged his conviction under *Rehaif*. *United States v. Reed*, 941 F.3d 1018, 1022 (11th Cir. 2019).

The district court did not abuse its discretion by denying Brown's motion for a new trial. *See United States v. Perez-Oliveros*, 479 F.3d 779, 782 (11th Cir. 2007) (reviewing a district court's denial of a motion for a new trial for abuse of discretion). The record shows Brown knew he was a felon at the time he possessed the gun. As Brown concedes, he stipulated to having been convicted previously of a felony offense. His stipulation alone establishes he knew he was a felon at the time he possessed the gun. *Reed*, 941 F.3d at 1022. Moreover, Brown did not contest the knowledge element before or during trial. Thus, the Government established Brown knew he was a convicted felon when he possessed the gun, and the interests of justice did not require a new trial. *Rehaif*, 139 S. Ct. at 2200.

## F. *Sufficiency of the Evidence*

Sixth, Brown contends the evidence was insufficient to support his conviction. We will not reverse a conviction simply because a defendant put forth a reasonable hypothesis of innocence at trial. *United States v. Howard*, 742 F.3d 1334, 1342 (11th Cir. 2014). To sustain a conviction for possession of a firearm by a convicted felon under 18 U.S.C. § 922(g)(1), the government must prove three elements: (1) the defendant knowingly was a convicted felon; (2) the defendant

was in knowing possession of a firearm; and (3) the firearm was in or affected interstate commerce. *United States v. Wright*, 392 F.3d 1269, 1273 (11th Cir. 2004); *see also Rehaif*, 139 S. Ct. at 2200. The government may prove knowing possession by either direct or circumstantial evidence. *Howard*, 742 F.3d at 1341.

The Government presented sufficient evidence to support Brown's conviction. *See United States v. Taylor*, 480 F.3d 1025, 1026 (11th Cir. 2007) (stating we generally review the sufficiency of the evidence to support a conviction *de novo*). As noted above in the discussion of Brown's motion for a new trial, the Government established Brown knew he was a felon at the time of his possession of the gun through his stipulation. Additionally, a firearms expert testified the gun traveled in interstate and foreign commerce because it was manufactured in Austria. Thus, the only contested element was whether Brown possessed the gun.

Magana testified he saw Brown with a gun in his hand as he fled from officers. Further, he stated Brown dropped the gun during his flight and another officer quickly recovered the gun after Brown dropped it. In his jail calls, Brown admits that he possessed the gun in the front of his pants and that he threw it while fleeing from officers. This evidence is sufficient for conviction.

G. *Armed Career Criminal Act Enhancement*

Lastly, Brown argues the district court erred at sentencing by applying the Armed Career Criminal Act (ACCA) enhancement to him because he did not know

11

he was pleading guilty to an ACCA predicate offense during his plea colloquy for that offense.  We review *de novo* whether a particular conviction is a violent felony for purposes of § 924(e) and the ACCA.  *United States v. Day*, 465 F.3d 1262, 1264 (11th Cir. 2006).

Under the ACCA, a defendant convicted pursuant to 18 U.S.C. § 922(g) is subject to a mandatory minimum sentence of 15 years' imprisonment if he has 3 prior convictions for a violent felony or serious drug offense committed on occasions different from one another.  18 U.S.C. § 924(e)(1).  To determine the nature of a prior conviction, the district court is "limited to examining the statutory definition [of the offense of the prior conviction], charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented."  *Shepard v. United States*, 544 U.S. 13, 16 (2005).  These documents are known as "*Shepard*-approved sources" or "*Shepard* documents."  *United States v. McCloud*, 818 F.3d 591, 595 (11th Cir. 2016) (quotations omitted).

Florida's aggravated battery statute states that a person commits aggravated battery who, in committing battery: (1) "[i]ntentionally or knowingly causes great bodily harm, permanent disability, or permanent disfigurement; or [(2)] [u]ses a deadly weapon."  Fla. Stat. § 784.045(1)(a).  We have held Florida's aggravated battery statute is divisible, thus allowing the use of *Shepard* documents to

determine whether the offense of conviction qualified as a violent felony under the ACCA. *United States v. Vereen*, 920 F.3d 1300, 1314 (11th Cir. 2019). Further, we held Florida aggravated battery with a deadly weapon qualifies as a violent offense under the ACCA's elements clause. *Id.* at 1315.

The district court did not err in applying the ACCA enhancement to Brown at his sentencing. The *Shepard* documents for Brown's Florida conviction establish he pleaded guilty to aggravated battery involving a deadly weapon, which qualifies as an ACCA predicate. The indictment for that charge states Brown struck his victim in the arm with an automobile, "using a deadly weapon." Although, Brown's trial counsel during the plea colloquy for that charge stated Brown would be pleading to battery on a law enforcement officer with a weapon, the Florida trial court explained the nature of the charge and informed Brown the applicable penalty was up to 30 years in prison because his charge was a first-degree felony. Indeed, Brown's contention his trial counsel's comments show he did not know he was pleading to a qualifying ACCA predicate are inapposite because the *Shepard* documents for that charge established he pled guilty to a qualifying predicate. *Shepard*, 544 U.S. at 16.

## II. CONCLUSION

Accordingly, we affirm Brown's conviction and sentence.

**AFFIRMED.**

13