[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-14051

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 24, 2010
JOHN LEY
CLERK

D. C. Docket No. 06-00076-CR-1-RWS-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

WILLIE JEROME PARKS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 24, 2010)

Before HULL, MARTIN and FAY, Circuit Judges.

HULL, Circuit Judge:

Defendant-Appellant Willie Jerome Parks appeals his convictions and

sentences for attempting to distribute cocaine hydrochloride, in violation of 21

U.S.C. § 841(a)(1) & (b)(1)(C)), and possession of firearms and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g) & 924(e). After review and oral argument, we affirm.

## I. BACKGROUND

### A. Search of 878 Rock Street Residence

On January 9, 2004, law enforcement officers executed a search warrant on a residence at 878 Rock Street, Atlanta, Georgia. The building was composed of separate apartments, and the officers searched Apartment B. Before executing the search warrant, law enforcement officers observed several adults go in and out of Apartment B. Officers had to go through a "burglar-bar door" that had a hole in the mesh of the door. Officers entered Apartment B, found a group of individuals in the living room, and observed drugs and drug paraphernalia, primarily marijuana. Defendant Parks was in the kitchen and was arrested. The officers also secured four women present in the living room, including two minors.

Law enforcement officers searched Defendant Parks and found: (1) $3,900 in cash; (2) a small pill bottle containing 36-39 small, yellow, plastic zip-lock bags containing a white powder believed to be cocaine; (3) a set of keys; and (4) additional small zip-lock bags. Law enforcement officers did not find a wallet on Parks. Subsequent laboratory tests revealed the bags in the Parks's pill bottle

2

contained 2.8 grams of cocaine.

Law enforcement officers continued searching Apartment B. In the living room, they found a plastic bag containing what laboratory tests later revealed to be 137.4 grams of marijuana. The officers also found a small gram scale. Officers saw a small "trail" from the bedroom to the bathroom of what looked like small pieces of crack cocaine, later determined to be 0.78 grams of crack. In the sink in the bathroom, officers found single-edged razor blades and additional pieces of suspected crack cocaine.

Atlanta Police Department ("APD") Investigator William Gilmore searched the apartment's bedroom and found a locked safe under the bed or near the back part of the bedroom. The keys found on Defendant Parks did not include a key to the safe. Investigator Gilmore forced the safe open. In the safe were a wallet, a plastic bag containing what appeared to be a brick of powdered cocaine, and 43 rounds of ammunition for .357 and .38 caliber handguns. The wallet contained a driver's license card issued to Defendant Parks, a health system identification card issued to Parks, some shopping advantage cards issued to Parks, an expired temporary driver's license issued to Parks, a money order bearing the address of 878 Rock Street, and a personal note addressed to "Willie." Defendant Parks was taken into custody on the same day as the search of 878 Rock Street.

3

After searching Apartment B, Investigator Gilmore placed the wallet and the other items recovered into a sealed property envelope that he turned over to the APD property section. Before he did so, a photograph was taken of the open safe, showing its contents, including the wallet. Investigator Gilmore's property evidence inventory report after Parks's arrest did not indicate the existence of a wallet in the safe, which Gilmore later described as an "omission." However, Gilmore's summary narrative in his incident report did mention that a "billfold" belonging to Parks was found in the safe. The search warrant return inventory also indicated that a wallet containing Parks's identification was seized during the search.

Sometime after the search, Investigator Gilmore signed out the wallet and its contents from the APD property section for various hearings and proceedings. At Parks's trial, Gilmore testified that he inadvertently sealed the wallet with some other records in a box in his possession and for a time believed the wallet had been destroyed. Records from the APD property section also indicated that a wallet from this investigation had been destroyed. Sometime after Parks's arrest, Investigator Gilmore informed Regina Cannon Stephenson, Parks's original attorney, that the wallet found in the safe had been destroyed. Attorney Stephenson's investigator also searched for the wallet at the APD inventory room

4

and could not locate it. Gilmore retired from the APD in 2007.

Four days after the search of Apartment B, Gilmore and other law enforcement officers executed another search warrant on a U-Haul storage unit, numbered 4905 and located at 300 Peter Street in Atlanta, Georgia. The trial evidence showed that Defendant Parks entered into a rental contract for this storage unit on August 29, 2002 and continued to rent the unit up to and through the date of the search on January 13, 2004. The only other person on the rental agreement was Mary Parks, Defendant Parks's mother. In the storage unit, law enforcement officers found two .38 caliber revolvers, a .357 revolver, and a .25 caliber semiautomatic pistol. Parks was in custody between January 9, 2004 and January 13, 2004.

Under the rental agreement, only Parks and his mother had access to the storage unit. According to the trial testimony of a representative from the U-Haul storage facility, each storage unit has two locks. One lock is owned by the renter, and one lock is owned by U-Haul. In order to access a storage unit, therefore, a renter must present identification at the U-Haul counter to obtain the key that unlocks the U-Haul lock on the storage unit and bring his own separate key to open the renter's lock. The rental facility employee testified that individuals other than Parks and his mother made rental payments for the unit, but they would not have

5

been allowed to access the unit. The rental facility employee also testified that if an individual accompanied Parks or his mother to the rental facility, they would have been allowed to go to the unit with Parks or his mother. The storage facility does not keep records of people who appear to go into the storage facility.

**B.      Indictment and Trial**

On February 14, 2006, a grand jury indicted Parks. Pursuant to the second superseding indictment, the grand jury charged Parks with five counts: (1) possession of ammunition (found in the safe on January 9, 2004) by a convicted felon, in violation of 18 U.S.C. §§ 922(g) & 924(e); (2) possession with the intent to distribute a mixture and substance containing a detectable amount of marijuana, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(D); (3) attempt to distribute a mixture and substance containing a detectable amount of cocaine hydrochloride, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(c); (4) possession with the intent to distribute at least 50 grams of cocaine base (crack), in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A)(iii); and (5) possession of firearms and ammunition (found in the storage unit on January 13, 2004) by a convicted felon, in violation of 18 U.S.C. §§ 922(g) & 924(e). Parks pled not guilty.

In May 2008, Parks filed a motion in limine to exclude trial testimony concerning the wallet because his attorney Stephenson could not examine it (as it

was believed that the wallet had been destroyed). Parks also noted that the photograph of the safe's contents, while showing a wallet, did not show any identifying information linking the wallet or safe to Parks.

On May 20, 2008, Parks moved to excuse Stephenson from the case, which the district court granted the following day. Parks indicated he was going to retain a new attorney but apparently never did. On August 6, 2008, the magistrate judge appointed Attorney R. Gary Spencer to represent Parks. Spencer, like Stephenson, also believed the wallet was destroyed.

At some point, Gilmore discovered the wallet in a box in his house and, on approximately August 1, 2008, turned it over to a law enforcement agent still working on this case. On the first day of Parks's trial in May 2009 and during consideration of Parks's motion in limine, the government disclosed that it had found the wallet and intended to introduce it at trial. The government told the district court that (1) Gilmore found the wallet in August 2008 and (2) the government had informed Parks's previous attorney Stephenson that it found the wallet in August of 2008.[1]

Defendant Parks, through his new attorney Spencer, then moved for a continuance based on a discovery violation. The district court granted a

---

[1]Stephenson later testified she was never informed by the government that the wallet had been located.

7

continuance for one day.  The same day, Parks filed another motion in limine to exclude the wallet due to the government's failure to disclose it in a timely manner.  See Fed. R. Crim. P. 16(c).  The district court denied Parks's motion, determining the government had not acted in bad faith and had not committed a discovery violation, and that Parks had not shown he would suffer any harm from moving forward with trial.  The district court determined its one-day continuance helped to put Parks back on a level playing field.  Following its ruling, the district court asked if Parks's attorney Spencer had any arguments regarding a further continuance, but attorney Spencer responded that he understood the ruling and was "ready to go forward."

Following trial, the jury convicted Parks of attempting to distribute cocaine (Count 3) and possession of firearms and ammunition (found in the storage unit) by a convicted felon (Count 5).  Parks was acquitted of the other counts.[2]

## C.    Sentencing

The presentence investigation report ("PSI") listed Parks's base offense level for Count 3 as 30 based on U.S.S.G. § 2D1.1 and the drug table in U.S.S.G. § 2D1.1(c)(3).  As to Count 5, the PSI listed Parks's total offense level as 32, consisting of: (1) a base offense level of 24 under § 2K2.1(a)(2); (2) a two-level

---

[2]Parks twice moved for judgment of acquittal on all counts pursuant to Fed. R. Crim. P. 29, once at the close of the government's case and again at the close of the evidence.

increase under § 2K2.1(b)(1)(A) because the offense involved at least three but less than eight firearms; (3) a two-level increase under § 2K2.1(b)(4) because the .357 firearm had an obliterated serial number; and (4) a four-level increase under § 2K2.1(b)(6) because Parks possessed the firearms and ammunition in the storage unit in connection with drug trafficking. Ultimately, however, because Parks was an armed career criminal under 18 U.S.C. § 924(e), the PSI calculated his offense level for Counts 3 and 5 under U.S.S.G. § 4B1.4(a) and (b), the "armed career criminal" enhancement.[3] The PSI listed Parks's offense level as 34 under the armed career criminal enhancement.

The PSI set out Parks's criminal history, including state-court convictions for possession of cocaine with intent to distribute and possession of marijuana (1984), aggravated assault (1987), possession of marijuana and cocaine (1991), and possession of cocaine with the intent to distribute and possession of a firearm by a felon (1998). The PSI noted Parks was arrested, but not convicted, for aggravated

---

[3]U.S.S.G. § 4B1.4(a) provides that a defendant subject to an enhanced sentence under 18 U.S.C. § 924(e) is an "armed career criminal." U.S.S.G. § 4B1.4(b) provides that the offense level for an armed career criminal is the greatest of:
    (1) the offense level applicable from Chapters Two and Three; or
    (2) the offense level from 4B1.1 (Career Offender) (if applicable); or
    (3) (A)      34, if the defendant used or possessed the firearm or ammunition in connection with either a crime of violence, as defined in § 4B1.2(a), or a controlled substance offense, as defined in 4B1.2(b), or if the firearm possessed by the defendant was of a type described in 26 U.S.C. 5845(a); or
    (B)      33, otherwise.
U.S.S.G. § 4B1.4(b) (emphasis added).

child molestation, cocaine trafficking, and contributing to the delinquency of a minor. Parks's previous convictions gave him 9 criminal history points which placed him in criminal history category IV. Because Parks was an armed career criminal under U.S.S.G. § 4B1.4, the PSI listed his criminal history category as VI pursuant to U.S.S.G. § 4B1.4(c)(2). Based on his total offense level of 34 and criminal history category of VI, Parks's advisory guidelines range was 262 to 327 months' imprisonment.

At sentencing, Parks objected to the PSI's finding that his offense level was 34 under § 4B1.4(b)(3)(A), rather than 33, arguing that (1) there was no evidence that the firearm or ammunition involved in Count 5 was used in connection with a drug crime or crime of violence, and (2) the armed career criminal enhancement was based partially on conduct charged in Count 1 (possession of ammunition in the safe), of which he was acquitted.

In response the government argued that Parks should receive an offense level of 34 under § 4B1.4(b)(3)(A), and not 33 under § 4B1.4(b)(3)(B), because the firearms in Count 5 were used in connection with a drug crime. The government contended: (1) the cocaine found in Parks's pocket (in connection with his conviction under Count 3) and the other evidence supported the fact that he was a drug dealer and the guns in the storage unit were used "as a tool of his trade," and

(2) although Parks was acquitted on Counts 1 (possession of ammunition in the safe) and 4 (possession with intent to distribute crack cocaine) the evidence at trial showed that the ammunition seized from the safe matched the firearms found in the storage unit, Parks's wallet was in the safe, and that crack cocaine was also found in the safe. In the alternative, the government argued that Parks used the firearms in Count 5 in connection with a "crime of violence" under § 4B1.4(b)(3)(A) in that he was charged with aggravated child molestation of Kendra Brooks, an underage female who was present in Apartment B when it was searched on January 9, 2004.

The district court sustained Defendant Parks's objection to the offense level of 34 under § 4B1.4(b)(3)(A), agreeing with Parks that he did not possess a firearm or ammunition in connection with a crime of violence or a controlled-substance offense. Specifically, the district court concluded that: (1) it was difficult, based on the evidence, to conclude that the guns (in the storage unit) in Count 5 were related to drug trafficking, and (2) there was "no evidence" from which it could connect the use of a firearm to the charge of aggravated child molestation.

The district court concluded that Parks's total offense level was 33 and his criminal history category was VI. This resulted in a new advisory guidelines range being 235 to 293 months' imprisonment.[4] The district court sentenced Parks to

_____

[4]On appeal, Parks has not challenged his criminal history category of VI. We have not found any objection by Parks in the district court to paragraph 60 of the PSI which listed his

11

concurrent terms of 240 months' imprisonment on Count 3 (attempt to distribute cocaine) and 293 months' imprisonment on Count 5 (convicted felon in possession of firearms and ammunition in storage unit). Parks objected, arguing his sentence was not reasonable.

Parks filed this timely appeal.

## II. DISCUSSION

On appeal, Parks raises what he captions as five separate issues: (1) the government's trial evidence materially varied from Count 3 charging Parks with attempt to distribute cocaine; (2) the government presented insufficient evidence to support his Count 3 conviction; (3) the government presented insufficient evidence to support his Count 5 conviction; (4) the government's late disclosure of the existence of Parks's wallet and the wallet's admission into evidence substantially prejudiced his right to a fair trial and thus violated the Sixth Amendment; and (5) the district court's sentence was substantively unreasonable. We address each issue in turn.

## A. Count 3 – Attempt to Distribute Cocaine

As to Count 3, Parks argues (1) there was insufficient evidence to support his Count 3 conviction; and alternatively (2) the government's evidence materially

criminal history category as category VI.

12

varied from the indictment because Count 3 charged him with attempting to distribute cocaine but the trial evidence tended to prove the separate offense of possession of cocaine with the intent to distribute.

We review de novo the denial of a Rule 29 motion for acquittal and the sufficiency of the evidence to sustain a conviction, "viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility choices in favor of the jury's verdict." United States v. Tampas, 493 F.3d 1291, 1297-98 (11th Cir. 2007) (quotation marks omitted). "The jury is free to choose among alternative reasonable interpretations of the evidence, and the government's proof need not exclude every reasonable hypothesis of innocence." Id. at 1298 (citations and quotation marks omitted). Where, as in this case, the jury convicted the defendant, we affirm the conviction "if a reasonable juror could have concluded that the evidence established [the defendant's] guilt beyond a reasonable doubt." Id.

Count 3 charged Parks with attempting to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(c)). Section 841(a)(1) makes it unlawful for a person to knowingly or intentionally distribute a controlled substance or to possess with the intent to distribute a controlled substance. "Distribute" is defined as "to deliver (other than by administering or dispensing) a controlled substance or a

13

listed chemical." 21 U.S.C. § 802(11). Section 846 provides that "[a]ny person who attempts . . . to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense . . . ."[5]

"The basic elements of an attempt are (1) an intent to engage in criminal conduct and (2) conduct constituting a 'substantial step' towards the commission of the substantive offense which strongly corroborates the defendant's criminal intent." United States v. Collins, 779 F.2d 1520, 1533 (11th Cir. 1986); accord United States v. Yost, 479 F.3d 815, 819 (11th Cir. 2007). It is the defendant's "objective acts," not his subjective intent, that must "mark the defendant's conduct as criminal." United States v. McDowell, 705 F.2d 426, 428 (11th Cir. 1983).

Viewing, as we must, the evidence in the light most favorable to the government, we conclude the trial evidence was sufficient to sustain Parks's Count 3 conviction. The evidence showed Parks took several substantial steps toward distribution in that: (1) he had obtained nearly $4,000 of cash in small bills, (2) he had obtained sizable amounts of cocaine, (3) he had acquired implements of drug distribution such as scales and razor blades, (4) he had divided up the cocaine into 30 small baggies of cocaine on his person, (5) there was a hole through the burglar bar in his front door through which drugs could be passed easily and safely, and (6)

---

[5]Defendant Parks does not dispute that 21 U.S.C. § 846 applies to attempt charges.

14

law enforcement's observation of the apartment building before the search showed several individuals coming and going, from which the jury may have inferred other completed drug transactions. A reasonable juror could have inferred from this evidence that Parks divided up the cocaine and then placed the cocaine in 30 small baggies intending to distribute them and that those objective acts were a substantial step in the commission of a distribution offense.

Parks's other argument—that the government's trial evidence materially varied from Count 3—also fails.[6] "A 'variance' occurs when the evidence at trial establishes facts materially different from those alleged in the indictment." United States v. Caporale, 806 F.2d 1487, 1499 (11th Cir. 1986). When the defendant claims a material variance between the indictment and the evidence presented at trial, we consider "[f]irst, whether a material variance did occur, and, second, whether the defendant suffered substantial prejudice as a result." United States v. Chastain, 198 F.3d 1338, 1349 (11th Cir. 1999). "To determine whether a variance was material, we look at the evidence in the light most favorable to the government . . . ." United States v. Seher, 562 F.3d 1344, 1366 (11th Cir. 2009). In considering whether a variance caused the defendant substantial prejudice, we may

_____

[6]It appears that Parks did not raise this material variance claim in the district court. For example, his Rule 29 motion for acquittal on Count 3 argued only that the government could not convict him of Count 3 because "there's simply no evidence whatsoever that he attempted to distribute cocaine . . . ." We need not determine whether only plain-error review applies because Parks's material variance claim fails under even de novo review.

15

consider whether "the proof at trial differed so greatly from the charges in the indictment that the defendant was unfairly surprised and had an inadequate opportunity to prepare a defense."  Caporale, 806 F.2d at 1500.

Parks has not shown error because the trial evidence did not materially vary from the charges in Count 3.  Indeed, as outlined above, the evidence proved the Count 3 charge of attempting to distribute cocaine.  That the evidence may have proved another offense—such as possession with intent to distribute—does not mean that it did not prove attempt to distribute cocaine too.  Parks's material variance argument is really another way of arguing the conduct proven against Parks was insufficient to prove an attempt to distribute offense.  In any event, Parks has not shown that he was unfairly surprised by the evidence or was not afforded an adequate opportunity to prepare a defense, or was substantially prejudiced by the trial evidence.

**B.     Count 5 – Felon in Possession of Firearms and Ammunition**

As to Count 5, Parks argues the government's trial evidence was insufficient to establish that Parks actually or constructively possessed the firearms or ammunition found in the storage unit.  As with Parks's sufficiency challenge to Count 3, we review this issue de novo, viewing the evidence in the light most favorable to the government and drawing all reasonable inferences and credibility

16

choices in favor of affirming the jury's verdict.

Count 5 charged Parks, a convicted felon, with possessing the firearms and ammunition found in the storage unit, "[o]n or about January 13, 2004," the date of the search, in violation of 18 U.S.C. § 922(g).[7] To establish a § 922(g) offense, the government must prove beyond a reasonable doubt that the defendant "knowingly possessed a firearm and had been previously convicted of a felony." United States v. Gunn, 369 F.3d 1229, 1235 (11th Cir. 2004).[8]

Possession can be either actual or constructive and can be sole or joint. United States v. Iglesias, 915 F.2d 1524, 1528 (11th Cir. 1990). "A defendant has constructive possession if he exercises ownership, dominion, or control over the firearm. A defendant also has constructive possession if he has the power and intention to exercise dominion or control. The defendant may exercise that dominion and control either directly or through others." Gunn, 369 F.3d at 1235 (citations omitted). Constructive possession can be established by showing the defendant had "dominion or control over the premises or the vehicle" where the firearm was found. United States v. Derose, 74 F.3d 1177, 1185 (11th Cir. 1996).

_____

[7]"When the government charges that an offense occurred 'on or about' a certain date, the defendant is on notice that the charge is not limited to the specific date or dates set out in the indictment. Proof of a date reasonably near the specified date is sufficient." United States v. Reed, 887 F.2d 1398, 1403 (11th Cir. 1989) (citation omitted).

[8]Parks does not dispute now, and did not dispute at trial, that he was convicted of felony offenses within the meaning of § 922(g).

17

Here the trial evidence showed that Parks had constructive possession of the firearms and ammunition in the storage unit. Parks does not dispute that Gilmore and other law enforcement officers found the firearms and ammunition when they executed a search warrant on Unit # 4905, which Parks began renting on August 29, 2002 and which he was still renting at the time of the execution of the search warrant on January 13, 2004. Parks and his mother were the only two individuals who had access to the unit under the rental agreement. A rental facility employee testified that only Parks and his mother could have gained access to the unit, even if someone else had made a rental payment on Parks's behalf or walked in with his identification.[9] In order to access the storage unit, someone would need both (1) U-Haul's key to unlock the U-Haul lock, which could be obtained by presenting identification at the U-Haul counter, and (2) the key to unlock the renter's lock on the unit. Thus, Parks had dominion and control over the storage unit.

Given this evidence of Parks's dominion and control, Parks argues instead that because he was in custody during the four days between his January 9 arrest and the January 13 search of the storage unit, it is possible someone, presumably his mother, put firearms and ammunition in the storage unit without his knowledge during that four-day period, and thus he should not be held liable for possessing

[9]Parks's mother did not testify at trial.

18

them.  We disagree.  First, the fact that Parks's mother had access to the unit does not preclude a jury from finding that Parks had constructive possession of the firearms and ammunition found in the unit.  "Constructive possession need not be exclusive . . . ."  United States v. Poole, 878 F.2d 1389, 1392 (11th Cir. 1989) (although defendant did not have exclusive control over her house, several other individuals lived there, and defendant had returned from a trip only minutes before the execution of the search warrant, the facts were sufficient for a jury to find that she constructively possessed cocaine found in the house because she owned and exercised dominion and control over the house); United States v. Montes-Cardenas, 746 F.2d 771, 778 (11th Cir. 1984) ("Constructive possession may be shared with others, and can be established by circumstantial or direct evidence."); accord United States v. Marx, 635 F.2d 436, 440 (5th Cir. Unit B Jan. 1981); see United States v. Faust, 456 F.3d 1342, 1346 (11th Cir. 2006) (holding evidence was sufficient to show defendant had constructive possession of cocaine in apartment even though his wife also lived there and was the sole signatory on the renewal lease).  Moreover, Parks's mother did not testify and there is no evidence of his mother accessing the storage unit during the relevant time frame.

The second problem for Parks is that the indictment charged that he possessed these items "on or about" January 13, 2004.  An indictment need not

19

charge dates with absolute specificity, and proof of conduct reasonably near the charged date, from which the jury was entitled to infer possession, is sufficient. The jury was entitled to infer that the presence of firearms and ammunition in a storage unit continuously rented by Parks established constructive possession – and we can reverse that determination only if no reasonable juror would have made that inference. Parks has not met this burden.[10]

## C.    Introduction of the Wallet at Trial

Parks argues the government violated discovery rules by not informing him of the existence of the wallet after it was found by Investigator Gilmore around August 1, 2008, and that this violation caused enough prejudice that the district court should have excluded the wallet from evidence at trial. Parks asserts the

---

[10]Parks cites United States v. Clavis, 956 F.2d 1079, 1089, modified in part on other grounds, 977 F.2d 538 (11th Cir. 1992), in support of his argument. That decision is materially distinguishable from this case. In Clavis, this Court held evidence was not sufficient to sustain a defendant's conviction for possessing cocaine on the date charged in the indictment. Id. at 1089. The defendant was not present when law enforcement agents searched the house where the cocaine was found because the defendant, like Parks, was arrested five days before. Id. Importantly, however, the house was rented to a different person than the defendant, and two other people were in the house when it was searched. Id. at 1085. During the search, agents found an address book bearing defendant's name, a Western Union money receipt bearing defendant's name and the address of the house, and an application for a social security number bearing defendant's name and the address of the house. Id. at 1085, 1089. This Court determined the evidence was sufficient to show the defendant had been living in the house, but not sufficient to show his possession of cocaine because of the intervening time lag and other individuals in control of the house and its contents at the time of search. Id. at 1089. In contrast, in this case the only evidence presented was that Parks rented the unit and that only he and his mother could have accessed it; and, there was no evidence that Parks's mother ever entered the unit or stored any property there. The jury was entitled to infer from this evidence that Parks constructively possessed the weapons and ammunition in the storage unit.

government knew the wallet existed and withheld that information for approximately 10 months before the May 18, 2009 date of trial.

We review discovery and evidentiary rulings for abuse of discretion.[11]  We will not reverse a defendant's conviction on the basis of a discovery violation unless it violates that defendant's substantial rights.  United States v. Bailey, 123 F.3d 1381, 1399 (11th Cir. 1997); United States v. Camargo-Vergara, 57 F.3d 993, 998 (11th Cir. 1994).  "Substantial prejudice exists when a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense or if the mistake substantially influences the jury."  Bailey, 123 F.3d at 1399; accord Camargo-Vergara, 57 F.3d at 998-999.

Criminal Rule 16 provides, in relevant part, that "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the

---

[11]"We review cases dealing with discovery violations under Fed. R. Crim. P. 16 using an abuse of discretion standard."  United States v. Hastamorir, 881 F.2d 1551, 1559 (11th Cir. 1989).

21

defendant." Fed. R. Crim. P. 16(a)(1)(E). Additionally, "[a] party who discovers additional evidence or material before or during trial must promptly disclose its existence to the other party or the court if: (1) the evidence or material is subject to discovery or inspection under this rule; and (2) the other party previously requested, or the court ordered, its production." Id. 16(c)).

Upon violation of Rule 16, the district court may order that the party permit discovery or inspection, grant a continuance, prohibit the violating party from introducing the undisclosed evidence, or enter any other just order. Id. 16(d)(2). Generally, "the district court should impose the least severe sanction necessary to ensure prompt and complete compliance with its discovery orders." United States v. Turner, 871 F.2d 1574, 1580 (11th Cir. 1989). "Factors for the district court to consider in deciding to impose a sanction include reasons for the delay in complying with the discovery order, whether there was any bad faith on the part of the prosecution, prejudice to the defendant, and the availability of a means to cure the prejudice, including continuances and recesses." Id.

Parks has not shown either that the district court abused its discretion in refusing to exclude the wallet from the government's trial evidence or that his convictions should be reversed because the government's Rule 16 violation substantially prejudiced his case. The government informed Parks about the wallet

22

initially and disclosed a copy of a photograph showing the wallet in the safe with a package of cocaine. While the photograph does not show the contents of the wallet, Officer Gilmore did include the existence of the wallet and Parks's identification found inside the wallet in the inventory of items seized that was returned to the judge after the execution of the search warrant. On February 7, 2007 (over two years before Parks's trial), Officer Gilmore testified at an evidentiary hearing in the district court that he had found a wallet containing Parks's identification inside the safe when he executed the warrant. For most of this case, the government believed in good faith that the wallet had been destroyed, and it informed Parks as such. At the beginning of trial, the government informed Parks it had found the wallet and intended to use it at trial. The district court then granted Parks a one-day continuance and permitted Parks to file a motion to exclude the wallet. Parks's counsel did not request more time to prepare as to the wallet. The district court subsequently denied the motion to exclude because it found no bad faith by the government and no prejudice to Parks, because he had known about the existence of the wallet all along, even if he believed it had been destroyed.

This Court has instructed district courts that usually the least-severe remedy is appropriate. Here, the district court granted a one-day continuance and fully

23

considered how the existence of the wallet itself would impact Parks's case.  The following day, after the district court denied Parks's motion to exclude the wallet, the district court told Parks's defense counsel it would hear any additional arguments regarding continuing the trial.  In response, Parks's defense counsel did not ask for additional time to prepare for trial beyond the one-day continuance, but instead stated, "Judge, we understand the court's ruling, and we're ready to go forward."  We see no abuse of discretion in the district court's conclusion.

Alternatively, Parks has not shown that any Rule 16 violation prejudiced his substantial rights.  Parks knew about the existence of the wallet and the photograph the government intended to introduce of the wallet in the safe, and about testimony from law enforcement agents describing the contents of the wallet.  Parks also has not shown the late introduction of the actual wallet in the photograph prevented him from making an adequate defense.  Indeed defense counsel stated he was ready to go forward with trial after the district court denied Parks's motion to exclude.  Finally, Parks was acquitted of a significant part of the conduct connected with the wallet, including possession of ammunition found in the safe (Count 1) and possession of crack cocaine found in the bedroom (Count 4).

## D. Sentencing Issues

Parks argues his sentences of 293 months' imprisonment on Count 5 and

24

240 months' imprisonment on Count 3 are substantively unreasonable because the sentences are (1) based on conduct bearing no relationship to the crimes for which he was convicted, and (2) greater than necessary to fulfill the purposes set forth in 18 U.S.C. § 3553(a)(2).

We review the reasonableness of a sentence for abuse of discretion using a two-step process. United States v. Pugh, 515 F.3d 1179, 1190 (11th Cir. 2008). We look first at whether the district court committed any significant procedural error and then at whether the sentence is substantively reasonable under the totality of the circumstances. Id. Parks does not challenge the district court's guidelines calculations or argue that his sentences were procedurally unreasonable. Rather, Parks argues only that his sentences were substantively unreasonable.

"In reviewing the ultimate sentence imposed by the district court for reasonableness, we consider the final sentence, in its entirety, in light of the § 3553(a) factors." United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006).[12] Although we do not apply a presumption of reasonableness to a sentence

---

[12]The § 3553(a) factors include:
(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for deterrence; (4) the need to protect the public; (5) the need to provide the defendant with needed educational or vocational training or medical care; (6) the kinds of sentences available; (7) the Sentencing Guidelines range; (8) pertinent policy statements of the Sentencing Commission; (9) the need to avoid unwanted sentencing disparities; and (10) the need to provide restitution to victims.

imposed within a correctly calculated guidelines range, we ordinarily expect that such a sentence is reasonable. United States v. Hunt, 526 F.3d 739, 746 (11th Cir. 2008). Moreover, "the party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both [the] record and the factors in section 3553(a)." United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005).

The district court sentenced Parks to a total of 293 months' imprisonment on Count 5, the high end of the advisory guidelines range, and 240 months for Count 3, neither of which Parks argues was incorrectly calculated. At sentencing, the government presented the testimony of: (1) Kendra Brooks, a minor, who submitted a statement to police that Parks had sexual relations with her from when she was 13 to 16 years old and that she had three pregnancies and miscarriages during her relationship with Parks; and (2) Kendra Brooks's father, Henry Jeter, who testified that Kendra ran away from home at age 13 and was being held by Parks, who Jeter described as a "monster," against her will. The district court had already concluded that the aggravated child molestation charge was not sufficiently connected to the weapons found in the storage unit to warrant an offense level of 34 under § 4B1.3(b)(3)(A). However, the district court allowed testimony from

United States v. Talley, 431 F.3d 784, 786 (11th Cir. 2005) (summarizing 18 U.S.C. § 3553(a)).

26

Brooks and her father in connection with the § 3553(a) factors.

In considering Parks's conduct as a whole before imposing the sentences, the district court noted that when law enforcement officers searched Parks's apartment they found "stolen property, . . . dealing in drugs; minors there for sexual purposes. There's everything in the world going on in this place." The district court also noted that Parks's criminal history illustrated the "sad truth . . . that [Parks] . . . built the history of over 20 years of conduct that's just not appropriate." The district court continued, addressing Parks directly: "You are not in the past contributing to society. You're pulling it down. You're putting drugs on the streets; you're stealing property; you're having children, runaways, staying in your house. There's nothing good going on. . . . [W]hen I look at the 3553 factors, I just don't find anything, that mitigates in your favor."

Parks argues the district court erred in considering the testimony of Brooks and her father Jeter. He contends that the government's recommendation of 293 months' imprisonment on Count 5 (firearms and ammunition in the storage unit) was based on the allegation that Parks committed aggravated child molestation with Brooks. Parks contends this testimony was irrelevant and the district court's consideration of such testimony in determining his sentence was unreasonable. Parks notes that, under U.S.S.G. § 1B1.3(a)(1) and (a)(3), the guidelines limit the

27

"relevant conduct" on which the guideline range determination is to be based to acts and omissions committed by the defendant during the offense of conviction and to the harm that results from those acts and omissions. See U.S.S.G. § 1B1.3.

Parks's argument is unpersuasive. First, § 1B1.3 identifies "relevant conduct" for the purpose of calculating a defendant's advisory guidelines range, and not for the purpose of determining a reasonable sentence within that range under the factors listed in § 3553(a). See U.S.S.G. § 1B1.3 (titled, "Relevant Conduct (Factors that Determine the Guideline Range)"). The transcript from the sentencing hearing reveals that the district court explicitly refused to consider the aggravated child molestation charge in its calculation of the advisory guidelines range. In calculating Parks's offense level under the armed career criminal enhancement in § 4B1.4(b)(3)(B), the district court sustained Parks's objection to the use of the aggravated child molestation charge and concluded that Parks's offense level should be 33 rather than 34 because there was insufficient evidence to connect Parks's possession of firearms with the charge of aggravated child molestation. Furthermore, at the point in the hearing when the district court ruled that Parks had an offense level of 33 with a criminal history category of VI, neither Brooks nor Jeter had testified yet. Thus, it is clear from the record that the district court relied on Brooks's and Jeter's testimony only as to the determination of his

28

sentences within the advisory guidelines range, and not as to the calculation of that range.

Second, as to the substantive reasonableness of Parks's sentence, the district court did not err in considering Brooks's and Jeter's testimony. In fashioning a reasonable sentence, federal sentencing law provides: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. The § 3553(a) factors include, <u>inter alia</u>, "the history and characteristics of the defendant," and "the need to protect the public." <u>Talley</u>, 431 F.3d at 786. Parks has shown no error in the district court's consideration of Jeter's and Brooks's testimony in determining reasonable sentences in this case.

Parks also argues his 293-month sentence under Count 5 is greater than necessary to satisfy the § 3553(a) factors. Because he was 49 years old at sentencing, Parks asserts the 240-month sentence he requested would have been sufficient.[13] The district court considered Parks's total conduct, including his criminal history and acquitted offenses, in determining the sentence to impose. As

---

[13]Despite arguing that both of his sentences are unreasonable, Parks contends in his brief on appeal that a 240-month sentence (the same length as his Count 3 sentence) would be reasonable and adequate in light of the factors in 18 U.S.C. § 3553(a). Thus, Parks has conceded the reasonableness of his sentence under Count 3. Regardless, we conclude that both sentences are substantively reasonable under the circumstances.

the district court discussed at sentencing, Parks had an extensive criminal history of drug trafficking and firearms possession and was involved, albeit through acquitted conduct, with child molestation and providing illegal drugs to minors in exchange for sex. The district court was within its discretion to sentence Parks to an imprisonment term at the top end of the correctly-calculated advisory guidelines range.

For all of these reasons, we affirm Parks's convictions and sentence.

**AFFIRMED.**