[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-14959

_____

D.C. Docket No. 6:15-cr-00219-CEM-TBS-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GEORGE ADRIEN BROOKS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 18, 2018)

Before MARCUS and NEWSOM, Circuit Judges, and BUCKLEW*, District
Judge.

_____

* Honorable Susan C. Bucklew, United States District Judge for the Middle District of Florida,
sitting by designation.

PER CURIAM:

George Adrien Brooks appeals his conviction under 18 U.S.C. § 2422(b) for using a facility of interstate commerce to attempt to knowingly persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity. After careful review of the record, and with the benefit of oral argument, we affirm Brooks' conviction.

## BACKGROUND

In 2015, Rodney Hyre, a FBI Special Agent in charge of a group that investigates sexual predators, found a Craigslist ad titled "Family Play Time—m4m (Orlando)," which was posted by Brooks. Based on his previous experience, Special Agent Hyre understood that terms such as "family" and "play" were used by sexual predators seeking children with whom to engage in sexual activities. Special Agent Hyre posed as the father of a ten-year-old boy and a 13-year-old girl and responded to Brooks' ad by e-mail. During their subsequent e-mail exchange, Brooks expressed an interest in having sex with the fictitious children and eventually gave Special Agent Hyre his phone number.

In a recorded phone conversation, Special Agent Hyre confirmed his understanding that Brooks was interested in having sex with his fictitious ten-year-old son. Brooks stated that he was interested in "touching," "holding," "oral," and "kissing," and he was open to "giving" and "receiving." When asked how he

2

became interested in this type of activity, Brooks stated that he had previously responded to a similar ad posted by the father of a 12-year-old boy by sending an e-mail expressing his interest. Brooks and Special Agent Hyre eventually agreed to meet in person at a shopping center. Prior to the meeting, Brooks asked Special Agent Hyre whether he should groom his genitals; Special Agent Hyre responded that "trimmed is probably best."

On the day of the meeting, Brooks parked behind an officer posing as Special Agent Hyre. When Brooks approached the officer, he was arrested. After his arrest, Special Agent Hyre seized Brooks' cellphone, and Brooks consented to a search of his cellphone. Brooks also disclosed his e-mail addresses and passwords, consented to searches of his e-mail accounts and vehicle, and signed a consent form authorizing officers to assume his online identity. Brooks admitted that he had posted several online ads regarding incestuous sex, that he had used his cellphone to communicate with Special Agent Hyre about having oral sex with Hyre's ten-year-old son, that he had traveled to the shopping center for that purpose, that he had groomed his genitals the previous night, and that four years earlier he had responded to a similar ad and communicated with a man about having sex with that man's 12-year-old son until the man stopped communicating. A forensic analysis of Brooks' cellphone showed that all of the e-mails between

3

Brooks and Special Agent Hyre had been transmitted over the Internet through Brooks' cellphone.

On September 30, 2015, a federal grand jury in Orlando, Florida returned an indictment charging Brooks with using a facility of interstate commerce to attempt to knowingly persuade, induce, entice, or coerce a minor to engage in unlawful sexual activity in violation of 18 U.S.C. § 2422(b). Prior to trial, the Government responded to Brooks' Federal Rule of Criminal Procedure 16 discovery request by disclosing copies of certain e-mails and the post-arrest form Brooks signed allowing the FBI to assume his online identity. The Government also gave notice of its intention under Rules 414 and 404(b) of the Federal Rules of Evidence to introduce at trial Brooks' statements to Special Agent Hyre regarding his prior conversations with the father of the 12-year-old boy. The district court denied Brooks' motion in limine to exclude these statements, finding that they were inextricably intertwined with the charged offense.

Ten days prior to trial, the Government learned that Brooks allegedly molested his then seven-year-old nephew, John Gopoian, 44 years earlier.  The Government sought to call Gopoian to testify at trial under Rules 414 and 404(b). Brooks objected and sought to exclude this testimony, arguing that the disclosure was untimely and unfairly prejudicial to the defense. The district court overruled Brooks' objection but continued the trial at Brooks' request to remedy the late

4

disclosure. Brooks renewed his objection to Gopoian's testimony prior to *voir dire*, arguing that the testimony was inadmissible under Rules 414 and 403 of the Federal Rules of Evidence. The district court ruled the testimony was admissible under Rule 414 and not precluded by Rule 403. The district court did, however, agree to give a limiting instruction regarding Gopoian's testimony.

After a three day trial, Brooks was found guilty of violating § 2422(b) and was sentenced to serve 216 months in prison. This appeal followed, in which Brooks raises nine arguments for reversal. As explained below, we reject Brooks' arguments and affirm his conviction and sentence.

## DISCUSSION

### I.    *Batson* **Challenges**

Brooks first argues that the district court erred in overruling his *Batson* challenges to the Government's striking of two potential jurors, one Indian-American and one Hispanic, during jury selection. He asserts that the district court failed to evaluate the Government's stated reason for the strikes and erroneously found that Brooks failed to show a pattern of discrimination. Brooks further contends the Government's proffered reasons for its strikes were neither genuine nor sufficiently specific.

"Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges for any reason at all, as long as that reason is related to his

5

view concerning the outcome of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race." *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S. Ct. 1712, 1719, 90 L. Ed. 2d 69 (1986) (internal quotations marks and citation omitted). *Batson* established a three-step process for trial courts to use in adjudicating a claim that a preemptory challenge was based on race:

> (1) the objector must make a *prima facie* showing that the peremptory challenge is exercised on the basis of race; (2) the burden then shifts to the challenger to articulate a race-neutral explanation for striking the jurors in question; and (3) the trial court must determine whether the objector has carried its burden of proving purposeful discrimination.

*United States v. Allen-Brown*, 243 F.3d 1293, 1297 (11th Cir. 2001) (citation omitted). A district court "should consider 'all relevant circumstances' supporting the challenging party's assertion of discrimination" including "the striking party's 'pattern' of striking venire members of a particular race, or making questions or statements during *voir dire* to members of a particular race that support the inference of a discriminatory purpose." *United States v. Robertson*, 736 F.3d 1317, 1325–26 (11th Cir. 2013) (quoting *Batson*, 476 U.S. at 96–97, 106 S. Ct. at 1723). However, "[t]he reason given for the peremptory strike need not be a good reason. It can be an irrational, silly[,] or superstitious reason, as long as it is not a discriminatory reason." *United States v. Hill*, 643 F.3d 807, 837 (11th Cir. 2011)

6

(internal quotation marks and citation omitted). In the last step, "the district court must evaluate the persuasiveness of the proffered reason and determine whether, considering all relevant circumstances, the objector has carried the burden of proving discrimination." *Id.* (citation omitted). Because a *Batson* challenge "turns largely on an evaluation of credibility," the "trial court's determination is entitled to great deference and must be sustained unless it is clearly erroneous." *Felkner v. Jackson*, 562 U.S. 594, 598, 131 S. Ct. 1305, 1307, 179 L. Ed. 2d 374 (2011) (internal quotation marks and citations omitted).

Here, the Government used preemptory strikes on Ganesh Ramachandran, an Indian-American man, and Angel Aviles, a Hispanic man. As to Ramachandran, Brooks made a generic *Batson* challenge. The district court, without first making a finding that Brooks had made a *prima facie* showing of discrimination, went directly to step two and asked the Government to articulate a race-neutral explanation for striking Ramachandran. In response, the Government stated that it struck Ramachandran based on his demeanor, the answers he gave regarding his background, and because "he had heard something about a similar case." As to Aviles, the district court noted that striking the Hispanic juror was "the beginning of a pattern" and asked the Government for a race-neutral reason for its strike. The Government stated it struck Aviles due to insufficient information about his

7

background. The district court denied both *Batson* challenges, finding that the Government had proffered sufficient non-racial reasons for the preemptory strikes.

We first note that we have previously stated that "the district court should not require an explanation for a peremptory strike from the striking party unless and until the court is satisfied that the challenging party has made its *prima facie* case of discrimination." *Robertson*, 736 F.3d at 1326 (citations omitted). Our review of the record indicates that the district court did not make this finding for either juror in question prior to asking the Government to state an explanation for its strike. Nevertheless, we hold that Brooks has failed to demonstrate that the district court clearly erred in accepting the Government's race-neutral reasons for striking Ramachandran and Aviles. "As fact-finder and judge of credibility, the [district] court had great discretion to accept [the Government's] race-neutral reason as truth or reject it as pretext." *Id.* at 1328 (citation omitted). Brooks has not presented any compelling reason why the district court erred in concluding that Ramachandran and Aviles were not struck for a discriminatory purpose. We therefore defer to the district court's determination.

## II.    Rule 16 Violation

Brooks next argues that the district court erred in denying Brooks' motion for mistrial based on the disclosure at trial of previously non-disclosed e-mails.

8

We review the district court's denial of a motion for mistrial for abuse of discretion. *United States v. Chavez*, 584 F.3d 1354, 1362 (11th Cir. 2009) (citations omitted). Federal Rule of Criminal Procedure 16(a)(1)(E) requires the Government, upon a defendant's request, to permit the defendant to inspect and copy items that are material to the defense, items that it intends to use in its case-in-chief, and items that were obtained from or belonged to the defendant. *See* Fed. R. Crim. P. 16(a)(1)(E)(i)–(iii). The district court's criminal scheduling order imposed a similar duty on the Government.

In order for a discovery violation under Rule 16 or a standing discovery order to constitute reversible error, it must violate a defendant's substantial rights. *See United States v. Camargo-Vergara*, 57 F.3d 993, 998 (11th Cir. 1995) (citations omitted). "Substantial prejudice exists when a defendant is unduly surprised and lacks an adequate opportunity to prepare a defense, or if the mistake substantially influences the jury." *Id.* at 998–99 (citations omitted). "Inadvertence does not render a discovery violation harmless; rather, the purpose of [R]ule 16 is to protect a defendant's right to a fair trial rather than to punish the government's non-compliance." *Id.* at 999 (citations omitted). We make the determination whether a defendant's rights were substantially prejudiced "in the context of the entire trial and in light of any curative instruction." *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007) (citation omitted), *cert. denied* 552 U.S. 899, 128

9

S. Ct. 218, 169 L. Ed. 2d 168 (2007). Further, any error is harmless where the record contains "sufficient independent evidence establishing guilt." *United States v. Adams*, 74 F.3d 1093, 1097–98 (11th Cir. 1996). In other words, we need a "reasonable probability that, but for the [error], the outcome would be different." *Id.*

Here, Special Agent Hyre seized Brooks' cellphone upon arresting Brooks. Brooks disclosed his e-mail addresses and passwords, consented to searches of his e-mail accounts, and signed a consent form authorizing officers to assume his online identity. While being cross-examined at trial, Special Agent Hyre confirmed that Brooks had turned over his e-mail accounts and allowed the officers to assume Brooks' online identity. Brooks' counsel then asked Special Agent Hyre whether Brooks' e-mail accounts contained other e-mails about having sex with children. To the surprise of Brooks' counsel, Special Agent Hyre indicated that he had found such other e-mails and that they had not previously been turned over to the defense. Despite the fact that this testimony was not beneficial to Brooks' defense, Brooks' counsel continued to question Special Agent Hyre about these e-mails, prompting the prosecutor to ask to approach sidebar.

At sidebar, the prosecutor indicated to the district court that both parties had access to Brooks' e-mail accounts and passwords and that the Government had not planned to address these other e-mails in its case-in-chief. The Government then

10

provided copies of these e-mails to Brooks and the district court. Brooks requested a recess so that he could review the newly disclosed e-mails.

After the recess, Brooks moved for a mistrial, arguing that the Government had violated Rule 16(a)(1)(E) by not turning over copies of these e-mails. He asserted that it was his understanding that he could no longer access his e-mail accounts because the FBI had stated that the passwords would be changed. However, Brooks' counsel conceded that although she had been offered access to Brooks' cellphone during discovery, she never attempted to access the e-mails on the phone. The district court denied the motion for a mistrial, finding that no discovery violation had occurred. Brooks then requested a limiting instruction. When the district court denied Brooks' proposed limiting instruction but offered to give a more narrow limiting instruction, Brooks withdrew his request.

At oral argument, the Government conceded to a discovery violation by failing to turn over the previously undisclosed e-mails. Accordingly, the only remaining issue before us is whether this discovery violation prejudiced Brooks' substantial rights.[1] Brooks argues that the Rule 16 violation substantially prejudiced his defense, particularly his entrapment defense and the issue of

---

[1] While the Government admitted to a discovery violation at oral argument, based on the circumstances we are not so sure a Rule 16 violation occurred.  Nevertheless, we will not address this issue given the Government's concession.

11

whether he was predisposed to commit such a crime. But the Government presented ample other evidence at trial to establish predisposition and intent, including Gopoian's testimony and Brooks' own admissions that he had previously communicated with the father of a 12-year-old boy regarding having sex with the boy. And here, it was not the Government that elicited this testimony from Special Agent Hyre; it was only in response to questions by Brooks' own counsel that Special Agent Hyre mentioned the subject e-mails. Further, Brooks himself presumably knew about the existence of these other e-mails because they were in his own e-mail account. We therefore conclude Brooks has failed to demonstrate a reasonable probability that the outcome of the trial would have been different but for the discovery violation. Accordingly, the district court did not abuse its discretion in denying Brooks' motion for a mistrial.

### III. Jury Instructions

Brooks makes three arguments on appeal regarding the district court's jury instructions. We address each in turn.

#### a. Definition of "Induce"

Brooks first asserts that the district court, in instructing the jury, erred by defining "induce" in § 2422(b) as "to stimulate the occurrence of or to cause." While the district court adhered to the pattern jury instruction for § 2422(b), s*ee Eleventh Circuit Pattern Jury Instructions (Criminal Cases)* 92.2 (2010), Brooks

12

contends this instruction was incomplete and misleading and that the district court should have defined "induce" to mean "to stimulate the occurrence of or to cause the assent of a minor to engage in unlawful sexual activity."

"We review *de novo* the legal correctness of jury instructions, but we review the district court's phrasing for abuse of discretion." *United States v. Seabrooks*, 839 F.3d 1326, 1332 (11th Cir. 2016) (citation omitted). Our goal is "to determine whether the instructions misstated the law or misled the jury to the prejudice of the objecting party." *Id.* at 1333 (quoting *United States v. Gibson*, 708 F.3d 1256, 1275 (11th Cir. 2013)).

Here, Brooks' argument is foreclosed by our decision in *United States v. Murrell*, 368 F.3d 1283 (11th Cir. 2004). In *Murrell*, we held that the term "induce" in § 2422 means "[t]o stimulate the occurrence of; cause." *Id.* at 1287 (alteration in original) (quoting THE AM. HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 671 (William Morris ed., Houghton Mifflin Co. 1981)). Because this is the exact definition given by the district court in its jury instructions and the exact definition in the pattern jury instruction, we cannot conclude that the district court misstated the law or mislead the jury. Consequently, the district court did not abuse its discretion in instructing the jury on the term "induce."

b.  *Theory of Defense*

13

Brooks next argues that the district court erred by denying his request for a theory of defense instruction. Specifically, Brooks asserts he requested an instruction that he should be acquitted if the jury found that he did not intend to cause a minor to assent to sexual activity. The district court denied the instruction, stating that Brooks had not produced any "evidence that could be considered legally sufficient to render [Brooks] innocent," that the proposed instruction was "essentially the inverse" of the offense instruction, and that the proposed instruction was "confusing."

We review the district court's refusal to give Brooks' requested theory of defense instruction for abuse of discretion. *See United States v. Votrobek*, 847 F.3d 1335, 1344 (11th Cir. 2017) (citation omitted). "Such a refusal is reversible error only if the requested instruction '(1) was a correct statement of the law; (2) was not adequately covered in the instructions given to the jury; (3) concerned an issue so substantive that its omission impaired the accused's ability to present a defense; and (4) dealt with an issue properly before the jury.'" *Id.* (quoting *United States v. Westry*, 524 F.3d 1198, 1216 (11th Cir. 2008)). "The instruction must have 'legal support' and 'some basis in the evidence.'" *Id.* (quoting *United States v. Morris*, 20 F.3d 1111, 1114–15 (11th Cir. 1994)).

Here, Brooks requested an instruction that he could not be found guilty if he did not intend to cause a minor to assent to sexual activity. But, as stated by the

14

district court, this was encompassed within the jury instruction given regarding §

2422(b). And it was also adequately covered by the entrapment instruction given

by the district court. Because of this, the failure to give such an instruction did not

impair Brooks' ability to present his defense. Moreover, Brooks presents no

argument to convince us that the district court incorrectly concluded that Brooks'

proposed theory of the defense instruction was not supported by the evidence.

Accordingly, the district court did not abuse its discretion by refusing to give the

jury Brooks' theory of the defense instruction.

c.  *Constructive Amendment*

Brooks also argues that the district court's jury instructions constructively

amended the indictment by including an additional means of interstate commerce

not included in the indictment. The indictment charged Brooks with enticing a

minor "using facilities and means of interstate commerce, that is, the Internet and a

computer." In its instructions to the jury, the district court added "cellphone" to the

facilities and means specified in the indictment. Brooks asserts that this addition

constituted a constructive amendment to the indictment because it allowed the jury

to convict Brooks solely on the phone conversation he had with Special Agent

Hyre, a ground not charged in the indictment.

"A constructive amendment to the indictment occurs where the jury

instructions so modify the elements of the offense charged that the defendant may

15

have been convicted on a ground not alleged by the grand jury's indictment."

*United States v. Gutierrez*, 745 F.3d 463, 473 (11th Cir. 2014) (internal quotation

marks and citation omitted). We review *de novo* whether the jury instructions

constructively amended the indictment. *Id.* (citation omitted).

Brooks argues that by adding "cellphone" to the means of interstate

commerce, the jury could convict him solely on his phone conversations with

Special Agent Hyre, without reliance on his e-mails. But we have previously held

that telephones and cellular phones are instrumentalities of interstate commerce

sufficient to satisfy the interstate commerce element of § 2422(b). *United States v.*

*Evans*, 476 F.3d 1176, 1180–81 (11th Cir. 2007); *see also United States v. Mathis*,

767 F.3d 1264, 1283 (11th Cir. 2014) (holding "that a defendant's use of a cell

phone to call and send text messages constitutes the use of a computer, as that term

is defined in 18 U.S.C. § 1030(e)(1), and warrants imposition of an enhancement

under [United States Sentencing Guideline] § 2G2.1(b)(6)"), *abrogated on other*

*grounds by Lockhart v. United States*, 577 U.S. ——, 136 S. Ct. 958, 194 L. Ed. 2d

48 (2016). The evidence at trial showed that Brooks' cellphone was a smartphone

that could access the Internet and that the e-mails between Brooks and Special

Agent Hyre had been transmitted over the Internet. Indeed, Brooks did not argue at

trial that his cellphone was not a computer and, in his reply brief, he admits that in

some instances his cellphone operated as a computer. We find unpersuasive

16

Brooks' argument that the jury could have convicted Brooks solely on his phone call with Special Agent Hyre because, while this evidence was highly incriminating, there was also substantial evidence found in Brooks' e-mails. Accordingly, we hold the jury instructions given by the district court did not constructively amend the indictment.

## IV.    Gopoian's Testimony

Brooks next asserts that the district court abused its discretion by admitting Gopoian's testimony under Rules 414 and 403 of the Federal Rules of Evidence.

We review the district court's interpretation of the Federal Rules of Evidence *de novo*, *Doe No. 1 v. United States*, 749 F.3d 999, 1003 (11th Cir. 2014) (citation omitted), and its decision whether to admit or exclude evidence for abuse of discretion, *United States v. Gunn*, 369 F.3d 1229, 1236 (11th Cir. 2004). Ordinarily, evidence that a defendant has a propensity to commit a crime is excluded from trial. *See* Fed. R. Evid. 404(b)(1). But Rule 414 provides an exception for similar crimes in child molestation cases. *See United States v. McGarity*, 669 F.3d 1218, 1243–44 (11th Cir. 2012). Rule 414 provides that, "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid.

414(a). Rule 414 defines "child" as "a person below the age of 14," Fed. R. Evid.

414(d)(1), and defines "child molestation" as follows:

> **(2)** "child molestation" means a crime under federal law or under state law (as "state" is defined in 18 U.S.C. § 513) involving:
>     **(A)** any conduct prohibited by 18 U.S.C. chapter 109A and committed with a child;
>     **(B)** any conduct prohibited by 18 U.S.C. chapter 110;
>     **(C)** contact between any part of the defendant's body — or an object — and a child's genitals or anus;
>     **(D)** contact between the defendant's genitals or anus and any part of a child's body;
>     **(E)** deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on a child; or
>     **(F)** an attempt or conspiracy to engage in conduct described in subparagraphs (A)–(E).

Fed. R. Evid. 414(d)(2). Evidence admitted under Rule 414 must satisfy the other

Rules of Evidence, including Rule 403. *United States v. Woods*, 684 F.3d 1045,

1064–65 (11th Cir. 2012).

Brooks argues that the district court was required to apply a categorical

approach to analyze whether his charged crime qualified as a child molestation

crime under Rule 414. He contends that the district court improperly admitted

Gopoian's testimony under Rule 414 because, using the categorical approach,

attempted enticement under § 2422(b) does not categorically qualify as a child

molestation crime. Under the categorical approach, used by sentencing courts

when determining whether a defendant's prior convictions qualify as predicate

offenses under the Armed Career Criminal Act, the sentencing judge is required to analyze the elements of a defendant's prior convictions instead of the "particular facts underlying those convictions." *Taylor v. United States*, 495 U.S. 575, 600, 110 S. Ct. 2143, 2519, 109 L. Ed. 607 (1990) (citations omitted). According to Brooks, attempted enticement of a minor under § 2422(b) does not qualify as a child molestation crime under this approach.

But Brooks points to no authority requiring us to apply the categorical approach to Rule 414. Nor does he provide any persuasive authority or reason why we should extend the categorical approach to Rule 414. Further, we are persuaded by the reasoning of the Seventh Circuit in *United States v. Foley*, 740 F.3d 1079 (7th Cir. 2014). In that case, the Seventh Circuit declined to apply the categorical approach to Rule 413, a rule similar to Rule 414 that allows for the introduction of evidence of past sexual offenses in sexual assault cases. *Id.* at 1087. The court stated:

> The focus of the Federal Rules of Evidence is on facts, and the policy rationale for Rule 413 is that a person who has engaged in the covered conduct is likely to engage in it again. Rule 413 uses statutory definitions to designate the covered conduct, but the focus is on the conduct itself rather than how the charges have been drafted.

19

*Id.* This reasoning applies with equal force to Rule 414. Accordingly, we decline to apply the categorical approach to Rule 414 and find no error in the district court's decision to allow the introduction of Gopoian's testimony under this rule.

Moreover, we are unconvinced that the district court abused its discretion by not excluding Gopoian's testimony under Rule 403, which provides that relevant evidence may be excluded "if its probative value is substantially outweighed by [the] danger of . . . unfair prejudice." Fed. R. Evid. 403. Indeed, because the district court gave an entrapment jury instruction, Gopoian's testimony was especially probative of Brooks' predisposition to commit the charged crime. Further, the district court instructed the jury that Brooks was not on trial for any conduct not charged in the indictment and they could not convict Brooks on Gopoian's testimony alone.

In sum, we find the district court did not err in admitting Gopoian's testimony under Rule 414.

## V.    Brooks' Conversations with the Father of a 12-Year-Old Boy

Brooks also contends the district court erred in admitting at trial his statements to Special Agent Hyre regarding Brooks' prior communications with the father of a 12-year-old boy. The district court found these statements were inextricably intertwined with the charged offense. On appeal, Brooks argues that

20

these statements were unrelated to his charged offense under § 2422(b) and were unduly prejudicial to his defense.

We review the district court's decision whether to admit or exclude evidence for abuse of discretion. *Gunn*, 369 F.3d at 1236. Rule 404(b) of the Federal Rules of Evidence provides that evidence of other crimes, wrongs, or acts is not admissible to prove a defendant's character in order to show action in conformity therewith. *United States v. Edouard*, 485 F.3d 1324, 1344 (11th Cir. 2007) (citing Fed. R. Evid. 404(b)). Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* (citing Fed. R. Evid. 404(b)). Additionally, evidence falls outside of the scope of Rule 404(b) if it is "inextricably intertwined with the evidence regarding the charged offense" and "forms an integral and natural part of the witness's accounts of the circumstances surrounding the offenses for which the defendant was indicted." *Id.* (internal quotation marks and citation omitted).

It is clear here that Brooks' comments about his prior conversations with a father regarding having sex with the father's 12-year-old son were inextricably intertwined with the charged offense. Our review of the evidence shows that Brooks offered this information when trying to convince Special Agent Hyre to let Brooks have sex with his fictitious ten-year-old son. These statements are therefore

21

inextricably intertwined with Brooks' charged crime. And, in any event, these statements could have been admitted as evidence of motive, intent, plan, or absence of mistake or accident under Rule 404(b)(2) or as a statement against interest under Rule 804(b)(3). Moreover, these statements were highly probative and not unduly prejudicial under Rule 403. We therefore conclude the district court did not abuse its discretion in admitting Brooks' statements regarding his previous conversations with the father of a 12-year-old boy.

## VI.    Judgment of Acquittal

Brooks next argues that the district court erred in denying his motion for a judgment of acquittal because the evidence was insufficient to show that Brooks intended to cause or took a substantial step towards causing a minor to assent to sexual activity, as required for an attempt conviction under § 2422(b).

Section 2422 provides, in relevant part:

> Whoever, using . . . any facility or means of interstate or foreign commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in . . . any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned.

18 U.S.C. § 2422(b). "With regard to intent, the government must prove that the defendant intended to cause assent on the part of the minor, not that he 'acted with the specific intent to engage in sexual activity.'" *United States v. Lee*, 603 F.3d

904, 914 (11th Cir. 2010) (quoting *United States v. Yost*, 479 F.3d 815, 819 n.3 (11th Cir. 2007)). In other words, "[t]he underlying criminal conduct that Congress expressly proscribed in passing § 2422(b) is the persuasion, inducement, enticement, or coercion of the minor rather than the sex act itself." *Murrell*, 368 F.3d at 1286. A defendant can be convicted under § 2422(b) "even though he communicated only with an adult intermediary" and "even though he attempted to exploit only fictitious minors." *Lee*, 603 F.3d at 912–13.

Brooks was convicted of attempt under § 2422(b) because there was no actual minor involved who could have been influenced. "To sustain a conviction for the crime of attempt, the government need only prove (1) that the defendant had the specific intent to engage in the criminal conduct for which he is charged and (2) that he took a substantial step toward commission of the offense." *Murrell*, 368 F.3d at 1286 (citations omitted). A defendant takes a substantial step when his "objective acts mark his conduct as criminal such that his acts as a whole strongly corroborate the required culpability." *Id.* at 1288 (citation omitted).

We review *de novo* the denial of a motion for a judgment of acquittal, viewing the evidence in the light most favorable to the Government and making all reasonable inferences and credibility choices in favor of the Government. *United States v. Evans*, 344 F.3d 1131, 1134 (11th Cir. 2003) (citation omitted). "A conviction must be upheld unless the jury could not have found the defendant

23

guilty under any reasonable construction of the evidence." *United States v. Chastain,* 198 F.3d 1338, 1351 (11th Cir. 1999) (citation omitted). Thus, we will uphold Brooks' conviction if a reasonable jury could have found that Brooks intended to induce Special Agent Hyre's fictitious ten-year-old son to assent to sexual contact with Brooks and that Brooks took a substantial step towards causing that assent.

Upon our review of the record, we conclude that a reasonable jury easily could have convicted Brooks of violating § 2422(b). First, there was ample evidence that Brooks intended to cause Special Agent Hyre's fictitious ten-year-old son to assent to sexual contact with Brooks. Brooks posted the Craigslist ad that contained words commonly used by predators seeking to have sex with children. He exchanged e-mails with Special Agent Hyre in which he expressed an interest in having sex with the fictitious ten-year-old. He indicated in a recorded telephone conversation that he was interested in "touching," "holding," "oral," and "kissing," and he was open to "giving" and "receiving."  Brooks admitted that he had posted several online ads regarding incestuous sex and that he had communicated with another man about having sex with the man's 12-year-old son. Moreover, Gopoian testified at trial that Brooks performed oral sex on him when he was a child.

24

Second, a reasonable jury could also have found that Brooks took a substantial step towards causing the assent of a minor. As explained above, Brooks posted an online ad and communicated with Special Agent Hyre via e-mail and the telephone regarding his intent to have sex with Special Agent Hyre's fictitious ten-year-old son.  Additionally, Brooks traveled to a shopping center to meet Special Agent Hyre and admitted that he groomed his genitals prior to this meeting. Considering the evidence of Brooks' actions as a whole, it is clear that a reasonable jury could conclude that Brooks took a substantial step towards causing the assent of a minor to engage in sexual activity with him. Accordingly, the district court did not err in denying Brooks' motion for a judgment of acquittal.

## VII.   Cumulative Effect

Lastly, Brooks contends that the cumulative effect of the district court's errors deprived Brooks of a fair trial. Under the cumulative error doctrine, "[e]ven where individual judicial errors or prosecutorial misconduct may not be sufficient to warrant reversal alone, we may consider the cumulative effects of errors to determine if the defendant has been denied a fair trial." *United States v. Lopez*, 590 F.3d 1238, 1258 (11th Cir. 2009) (citation omitted), *cert. denied*, 562 U.S. 981, 131 S. Ct. 413, 178 L. Ed. 2d 322 (2010). "In addressing a claim of cumulative error, we must examine the trial as a whole to determine whether the

appellant was afforded a fundamentally fair trial." *United States v. Calderon,* 127 F.3d 1314, 1333 (11th Cir. 1997) (citations omitted).

We have already determined that the district court did not err in overruling Brooks' *Batson* challenges, in instructing the jury, in the challenged evidentiary rulings, and in denying Brooks' motion for a judgment of acquittal. We further held that Brooks was not substantially prejudiced by the testimony regarding the previously non-disclosed e-mails. Reviewing the trial as a whole, we also conclude that the cumulative effect of these alleged errors did not deprive Brooks of a fair trial.

## VIII. Conclusion

For all of these reasons, we affirm Brooks' conviction.[2,3]

**AFFIRMED.**

---

[2] Brooks' Motion to Supplement the Record on Appeal, which was carried with the case, is **GRANTED**.

[3] Brooks' Motion to Hold Appeal in Abeyance for 90 Days Following Oral Argument is **DENIED**.